# **EXHIBIT 1**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-12465 (___) |
| | ) | |
|          Debtors. | ) | (Joint Administration Requested) |

Re: Docket No. __

## INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) CONFIRMING DEBTORS' ABILITY TO SELL INVENTORY, (C) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, AND (D) SETTING A FINAL HEARING

Upon consideration of the Motion (the "Motion")[2] filed by Fuhu, Inc. and Fuhu Holdings, Inc. (the "Debtors"), the above-captioned debtors and debtors in possession, seeking, inter alia, (a) authority pursuant to sections 105, 361, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, for the Debtors to use Cash Collateral (as defined below), and the Court having subject-matter jurisdiction to consider the Motion and the relief request therein pursuant to 28 U.S.C. § 1334; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on a non-consolidated basis, and (e) all other creditors and parties in interest requesting notice under

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

[2] Capitalized terms not defined in this Interim Order shall have the same meaning as set forth in the Motion.

Bankruptcy Rule 2002(i); and no other or further notice needing to be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. Grant of Motion. The Motion is granted on an interim basis, as set forth below.

2. Authority to Use Cash Collateral. Subject to the terms and conditions set forth in this Interim Order, and notwithstanding the terms of any control agreement with or notice provided by Tennenbaum, the Debtors are authorized to use Cash Collateral from the date of entry of this Order through and including the earliest of (i) the entry of a final order on the Motion; (ii) March 6, 2016; (iii) the dismissal of the Debtors' Chapter 11 cases; (iv) the conversion of these case to cases under Chapter 7 of the Bankruptcy Code; (v) the entry of an order reversing, vacating, or otherwise modifying this Order; or (vi) the appointment of a trustee under Section 1104(a) of the Bankruptcy Code or an examiner with expanded powers.

3. Budget. The Debtors are authorized to use Cash Collateral for the purposes and in the amounts listed in the budget attached hereto as **Attachment 1** (the "Budget"), provided that the Debtors shall not be authorized to use Cash Collateral for any payment on or of obligations arising before the Petition Date unless expressly authorized by order of this Court after notice and a hearing. The Debtors may use Cash Collateral to pay items which exceed budgeted line items, subject to variances of (i) 20% of total receipts and (ii) 20% of total

2

disbursements, tested on a rolling 3-week basis, with no testing during the first 3 weeks after the Petition Date ("Permitted Variances"). The Budget may be amended with the approval of the Court after notice and a hearing.

4. Fees of United States Trustee and Professionals. The Debtors may use Cash Collateral to pay (i) fees owing to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) fees and expenses awarded by this Court to professionals retained in this case by the Debtors or an official committee of unsecured creditors (the "Committee") for services provided during the term of this Interim Order, to the extent set forth in the Budget. So long as the Debtors' right to use Cash Collateral has not expired, the Debtors shall be authorized to transfer to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "Expense Reserve Account"), on a weekly basis, the amounts that such professionals may be paid pursuant to the Budget for such week. Such funds shall be held for the benefit of such professionals, to be applied to the fees and expenses of such professionals that are approved for payment pursuant to one or more orders of the Court. Any fees and expenses payable to professionals shall be paid first out of the Expense Reserve Account. To the extent that the fees and expenses of such professionals that are allowed pursuant to one or more orders of the Court are less than the amounts funded into the Expense Reserve Account, the excess amounts in the Expense Reserve Account shall be remitted to the Debtors and shall subject to the applicable liens of the Pre-Petition Lenders. Notwithstanding the foregoing, the Debtors shall use cash and cash equivalents which do not constitute Cash Collateral (including but not limited to the use of retainers held by any professional for the payment of approved fees and expenses of such professional), if any, for the payment of expenses and obligations, whether in the Budget or otherwise, before using Cash Collateral for the payment of such expenses and obligations.

3

5. <u>Replacement Liens</u>. As adequate protection of the interests, if any, of the Pre-Petition Lenders in Cash Collateral, each of the Pre-Petition Lenders shall be and hereby is granted valid, perfected, binding, and enforceable replacement liens on and security interests in all assets of the Debtors and their estates of the same types and kinds as those assets in which the applicable Pre-Petition Lender held valid and non-avoidable liens or security interests as of the Petition Date, whether now existing or hereafter acquired (collectively, the "<u>Replacement Liens</u>"). The Replacement Liens shall have the same relative priority as the Pre-Petition Lenders' liens and security interests on the Petition Date and shall secure the amount by which the value of the applicable Pre-Petition Lender's interest in its collateral decreases as a result of the use of Cash Collateral or the imposition of the automatic stay in this case. The Replacement Liens are automatically deemed perfected upon entry of this Order without the necessity of any Pre-Petition Lender's taking possession or filing financing statements or other documents. The Replacement Liens shall not encumber any claim or cause of action arising under Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").

6. <u>Insurance</u>. As further adequate protection of the Pre-Petition Lenders' interests, if any, in Cash Collateral, the Debtors shall maintain property and casualty insurance with financially sound and reputable insurance companies on all personal property of the Debtors' estates in an amount not less than the value of such property on the Petition Date.

7. <u>Additional Adequate Protection for LSQ</u>. As further adequate protection of LSQ's interests, if any, in Cash Collateral, if and to the extent that the Debtors collect the proceeds of any accounts receivable against which LSQ extended credit to the Debtors, the Debtors shall segregate and hold such proceeds in escrow, pending resolution of any disputes between the Debtors and LSQ.

4

DOCS_DE:203681.1 29396/001

8. **Additional Adequate Protection for Tennenbaum**. As further adequate protection of Tennenbaum's interests, if any, in Cash Collateral, the Debtors shall make monthly payments of interest to Tennenbaum at the default rate of interest under Tennenbaum's pre-petition loan documents.

9. **Release of Inventory**. Notwithstanding any notice or demand by Tennenbaum, any warehouseman, logistics provider, bailee, or other person in possession of the Debtors' inventory is hereby authorized to release and ship inventory as directed by the Debtors.

10. **Segregation of Cash Collateral**. The Debtors shall segregate the Cash Collateral from any cash that is not Cash Collateral, as required by Section 363(c)(4) of the Bankruptcy Code.

11. **Reporting Requirements**. During the term of this Interim Order, the Debtors shall provide the following written reports to the Pre-Petition Lenders: (i) monthly operating reports filed with this Court; and (ii) by the Friday following the end of a particular business week, an accounts-receivable aging and a comparison of actual receipts and expenditures to amounts reflected in the Budget, each as of the end of the prior week.

12. **Preservation of Rights**. Nothing in this Interim Order represents a determination that any of the Pre-Petition Lenders has a valid claim against the Debtors or a valid, non-avoidable lien on or security interest in any assets of the Debtors or their estates. The Debtors' right to object to any claim, pursue any Avoidance Action, or otherwise seek appropriate relief against the Pre-Petition Lenders is preserved.

13. **Further Relief**. Except as specifically set forth herein, nothing in this Interim Order shall (i) limit the rights of the Debtors or the Pre-Petition Lenders to the relief granted herein; (ii) impair any of the Pre-Petition Lenders' right to relief under Section 507(b) of the

Bankruptcy Code if the protection provided in this Interim Order proves to be inadequate; or

(iii) bar the Debtors or the Pre-Petition Lenders from seeking other and further relief in this case.

14. <u>Binding Effect</u>. The terms and provisions of this Interim Order shall be binding upon and inure to the benefit of the Debtors, their estates, the Pre-Petition Lenders, and their successors and assigns, including any trustee appointed in this case.

15. <u>Effectiveness</u>. This Interim Order shall become effective upon its entry by the Clerk of the Court.

16. <u>Subsequent Hearing: Procedure for Objections and Entry of Final Order</u>. The Motion is set for a final hearing before this Court at _____ \_\_.m. on December \_\_, 2015 (the "Final Hearing"), at which time any party in interest may present any timely filed objections to the entry of a final order on the Motion. The Debtors shall promptly serve a copy of this Interim Order and notice of the Final Hearing as set forth therein, by regular mail, upon (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on a non-consolidated basis and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i). Objections to the entry of the Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801, no later than _____, 2015, which objections shall be served so that the same are received on or before 4:00 p.m. EST on such date by (i) counsel to the Debtors, and (ii) the Office of the United States Trustee, Attn., J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801. Any objections by creditors or other parties in interest to any of the

provisions of this Interim Order may be deemed waived unless filed and served in accordance with this paragraph.

17.  <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are hereby overruled.

18.  <u>Order Effective</u>.  This Interim Order shall be effective as of the date of signature by the Court.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

IT IS SO ORDERED.


Dated: December __, 2015

                                                                                                                            _____
                                                                                                                            United States Bankruptcy Judge

# Attachment 1

# Budget

Fuhu, Inc.
Weekly Cash Flow
Forecasted Results as of December 6, 2015

(in thousands)

| Week Ending | December Week 1 12/13 | December Week 2 12/20 | December Week 3 12/27 | Week 4 1/3 | January Week 5 1/10 | Week 6 1/17 | Week 7 1/24 | Week 8 1/31 | February Week 9 2/7 | Week 10 2/14 | Week 11 2/21 | March Week 12 2/28 | Week 13 3/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | |
| Outstanding AR Collections | $ 770 | $ 2,545 | $ 15 | $ 198 | $ 15 | $ 15 | $ 115 | $ 293 | $ - | $ - | $ - | $ - | $ - | $ 3,966 |
| Nabi Shop Receipts | 266 | 305 | 182 | 183 | 334 | 182 | 216 | 216 | 233 | 237 | 249 | 227 | 224 | 3,054 |
| Amazon Receipts | - | - | - | 259 | - | 328 | - | 171 | - | 210 | - | 234 | - | 1,203 |
| Other Receipts | - | - | 168 | 1,901 | 146 | 168 | 227 | 451 | 597 | 112 | 468 | 182 | 190 | 4,610 |
| **Total Receipts** | $ 1,036 | $ 2,850 | $ 365 | $ 2,540 | $ 496 | $ 693 | $ 558 | $ 1,130 | $ 830 | $ 560 | $ 717 | $ 643 | $ 414 | $ 12,833 |
| **Disbursements** | | | | | | | | | | | | | | |
| Payroll & Labor Payments | $ 557 | $ 38 | $ 488 | $ 45 | $ 521 | $ 38 | $ 403 | $ 78 | $ 410 | $ 156 | $ 403 | $ 78 | $ 607 | $ 3,817 |
| Taiwan Expenses | 100 | 100 | 100 | 100 | 100 | 300 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,500 |
| Cost of Sales | 323 | 340 | 657 | 142 | 121 | 134 | 140 | 243 | 99 | 79 | 79 | 257 | 99 | 2,708 |
| SG&A | - | 381 | 90 | 293 | 60 | 69 | 140 | 60 | 310 | 69 | 140 | 60 | 310 | 1,980 |
| Restructuring Professionals | 261 | 283 | 258 | 200 | 187 | 262 | 237 | 187 | 175 | 143 | 268 | 141 | 103 | 2,701 |
| Other Costs & Commitments | - | 250 | 250 | - | - | - | 4 | - | - | - | - | - | - | 504 |
| Rent & Office Expenditures | - | 35 | 183 | 28 | 123 | 63 | 55 | 146 | 5 | 15 | 55 | 146 | 5 | 860 |
| US Trustee Fee | - | - | - | - | - | - | 10 | - | - | - | - | - | 20 | 30 |
| LSQ Escrowed Payment | - | - | - | - | - | - | - | 1,279 | - | - | - | - | - | 1,279 |
| Reserve for Wind-Down Costs | - | - | - | - | - | - | - | - | - | - | - | - | 250 | 250 |
| Secured Loan Interest | 75 | - | - | - | 51 | - | - | - | 51 | - | - | - | 51 | 227 |
| **Total Disbursements** | $ 1,315 | $ 1,426 | $ 2,025 | $ 807 | $ 1,162 | $ 864 | $ 1,088 | $ 2,093 | $ 1,148 | $ 561 | $ 1,043 | $ 781 | $ 1,544 | $ 15,856 |
| **Net Operating Cash Flow** | $ (279) | $ 1,424 | $ (1,660) | $ 1,733 | $ (667) | $ (171) | $ (530) | $ (963) | $ (318) | $ (1) | $ (326) | $ (137) | $ (1,130) | $ (3,024) |
| **Cash** | | | | | | | | | | | | | | |
| Beginning Cash Balance [1] | $ 1,982 | $ 1,703 | $ 3,128 | $ 1,468 | $ 3,201 | $ 2,534 | $ 2,363 | $ 1,834 | $ 871 | $ 553 | $ 552 | $ 226 | $ 89 | $ 1,982 |
| Net Cash Flow | (279) | 1,424 | (1,660) | 1,733 | (667) | (171) | (530) | (963) | (318) | (1) | (326) | (137) | (1,130) | (3,024) |
| Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | $ 1,703 | $ 3,128 | $ 1,468 | $ 3,201 | $ 2,534 | $ 2,363 | $ 1,834 | $ 871 | $ 553 | $ 552 | $ 226 | $ 89 | $ (1,041) | $ (1,041) |
| **Inventory** | | | | | | | | | | | | | | |
| Total Units | 685 | 650 | 632 | 621 | 596 | 577 | 559 | 533 | 516 | 497 | 480 | 465 | 447 | |
| Total Value at Cost | 23,470 | 21,369 | 19,421 | 18,727 | 17,974 | 17,255 | 16,143 | 15,117 | 14,512 | 13,284 | 12,526 | 11,792 | 11,274 | |
| **Accounts Receivable** | $ 4,542 | $ 3,613 | $ 4,410 | $ 2,364 | $ 2,535 | $ 2,322 | $ 2,529 | $ 2,177 | $ 1,668 | $ 1,929 | $ 1,762 | $ 1,637 | $ 1,643 | |
| **Debt Summary** | | | | | | | | | | | | | | |
| **Secured Loan** | | | | | | | | | | | | | | |
| Beginning Loan Balance [2] | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | |
| Paydown | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre Filing Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Ending Secured Loan Balance** | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | $ 5,016 | |
| **LSQ Factor** | | | | | | | | | | | | | | |
| Beginning Balance | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ - | $ - | $ - | $ - | $ - | |
| Escrowed Payment | - | - | - | - | - | - | - | (1,279) | - | - | - | - | - | |
| **Ending LSQ Factor Balance** | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ 1,279 | $ - | $ - | $ - | $ - | $ - | $ - | |

[1] Excludes restricted cash of $471K.
[2] Excludes $400K yield enhancement fee and $700K applicable early termination fee alleged per Tennenbaum notice of acceleration and reservation of rights letter dated November 27, 2015