# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FUHU, INC., *et al.*,[1] | ) Case No. 15-12465 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) CONFIRMING DEBTORS' ABILITY TO SELL INVENTORY, (C) GRANTING ADEQUATE PROTECTION TO SECURED CREDITORS, AND (D) SETTING A FINAL HEARING

Fuhu Inc. and Fuhu Holdings, Inc. (the "Debtors") submit this motion (the

"Motion") for entry of an interim order on an expedited basis (the "Interim Order")

substantially in the form attached hereto as **Exhibit 1**,[2] and, following a final hearing to be set by

the Court (the "Final Hearing"), entry of a final order (the "Final Order" and, with the Interim

Order, the "Orders"), pursuant to sections 105, 361, 363, and 507 of title 11 of the United

States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing the

Debtors to use cash collateral and to sell inventory in which certain of their secured creditors

have or may claim an interest; and (b) granting related relief. In support of this Motion, the

Debtors rely on the *Declaration of James Mitchell in Support of First Day Motions* (the "First

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

DOCKET # 3

DATE 12-7-15

<u>Day Declaration</u>") filed concurrently herewith and fully incorporated herein by reference. The Debtors further represent as follows:

## Jurisdiction and Venue

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief requested herein are sections 105, 361, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1(b) and 4001-2.

## Overview

4.       By this Motion, the Debtors seek entry of the Interim Order, which:

   a.       authorizes the Debtors to use cash collateral whenever or wherever acquired, and the proceeds of all collateral pledged to any pre-petition secured party, as contemplated by section 363 of the Bankruptcy Code, in accordance with the terms set forth in the Interim Order and the Budget attached to the Interim Order;

   b.       grants adequate protection to the pre-petition secured parties in accordance with the terms set forth in the Interim Order;

2

c.    confirms the Debtors' ability to sell inventory and fulfill customer orders, notwithstanding any agreement with or direction given by any pre-petition secured creditor;

d.    waives the fourteen (14)-day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h), thereby providing for the immediate effectiveness of the Interim Order; and

e.    sets a Final Hearing for entry of an order authorizing the use of cash collateral on a final basis.

## Concise Statement of Relief Requested

5.    In accordance with Bankruptcy Rule 4001(b) and Local Rule 4001-(2),

below is a summary of the terms of the proposed use of cash collateral:

| | |
|---|---|
| **Borrowers:** | Fuhu, Inc. and Fuhu Holdings, Inc. |
| **Entities with Interests in Cash Collateral:** | LSQ Funding Group, Inc. (accounts receivable)<br><br>Obsidian Agency Services, Inc., as Agent for Tennenbaum Special Situations Fund IX, LLC and Tennenbaum Special Situations IX-O, L.P. (second priority in accounts receivable; first-priority in other assets)<br><br>Fusing International, Inc. and Hon Hai Precision Industry Co., Ltd. (third priority in certain accounts receivable)<br><br>Mattel, Inc.<br><br>These parties are referred to collectively as the "Pre-Petition Lenders." |
| **Purpose / Use of Proceeds:** | The Debtors are authorized to use Cash Collateral for the payment of their actual and necessary post-petition obligations including, without limitation, actual and necessary general operating and working-capital expenses incurred in the ordinary course of the Debtors' business and in accordance with the terms and conditions of the Interim Order and the budget attached thereto as Attachment 1 (the "Budget"), subject to the Permitted Variances (as defined below). (Interim Order ¶ 3). |
| **Budget and Variances:** | The Budget may be modified or amended with the approval of the Court after notice and a hearing. The Budget includes specified amounts to fund an escrow to pay the administrative costs associated with these cases, including, without limitation, to pay the budgeted fees of the Debtors' attorneys, accountants, and other professionals employed by the Debtors in this case and, if one is formed, to pay the budgeted fees of the Committee's professionals. In addition, the Debtors are authorized to pay the fees and expenses of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). The "Permitted Variance" is defined as a variance from the Budget of (i) 20% of total receipts and (ii) 20% of total disbursements, tested on a rolling 3-week basis, with no testing during the first 3 weeks after the Petition Date. (Interim Order ¶ 3-4). |
| **Expiration Date:** | The Debtors' authority to use Cash Collateral under the Interim Order will expire on the earliest of (i) the entry of a final order on the Motion; (ii) March |

| | |
|---|---|
| | 6, 2016; (iii) the dismissal of the Debtors' Chapter 11 cases; (iv) the conversion of these case to cases under Chapter 7 of the Bankruptcy Code; (v) the entry of an order reversing, vacating, or otherwise modifying this Order; or (vi) the appointment of a trustee under Section 1104(a) of the Bankruptcy Code or an examiner with expanded powers. (Interim Order ¶ 2). |
| **Adequate Protection:** | The Pre-Petition Lenders are granted the following forms of adequate protection, to the extent of any diminution in the value of their interests in their respective collateral from and after the Petition Date as a result of the use of Cash Collateral, the imposition of the automatic stay in this case (the "Adequate Protection"): (i) valid, perfected, binding, and enforceable replacement liens on and security interests in all assets of the Debtors and their estates of the same types and kinds as those assets in which the applicable Pre-Petition Lender held valid and non-avoidable liens or security interests as of the Petition Date, whether now existing or hereafter acquired (collectively, the "Replacement Liens"); (ii) super-priority claims pursuant to 11 U.S.C. § 507(b); and (iii) maintenance of insurance coverage on their collateral.

The replacement liens included in the Adequate Protection (i) shall attach in the same order of priority that existed with respect to the Pre-Petition Lenders' liens under applicable non-bankruptcy law as of the Petition Date, (ii) are automatically perfected, and (iii) exclude any Avoidance Actions.

(Interim Order ¶ 5). |

### Disclosures

6.      Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in possession seeking authority to use cash collateral must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage. The debtor in possession must also justify the inclusion of such provisions. In addition to the descriptions above, set forth below are the disclosures required in accordance with such rules:

a.      Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing. **Not applicable. However, Mattel, Inc. ("Mattel") will have the right to credit-bid or otherwise recover its pre-petition secured claim of $300,000 (discussed in greater detail below) in connection with the Debtors' proposed asset sale.**

b.      Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the

4

entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **Not applicable.**

c.     Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **Not applicable.**

d.     Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code. **Not applicable.**

e.     Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **As noted above, Mattel will have the right to credit-bid or otherwise recover its pre-petition claim of $300,000 in connection with the Debtors' proposed asset sale.**

f.     Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee Carveout. **The proposed Interim Order does not provide for disparate treatment for the professionals retained by a Committee from those professionals retained by the Debtors, except that the Budget projects the Debtors' professional fees to exceed the Committee's professional fees and to be paid somewhat earlier than the Committee's professional fees, in light of the Debtors' professionals' earlier and more extensive involvement in these cases. Budget attached to Interim Order.**

g.     Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **Not applicable.**

h.     Local Rule 4001-2(a)(i)(H) requires the disclosure of provisions that affect the Court's power to consider the equities of the case under section 552(b)(1) of the Bankruptcy Code. **Not applicable.**

i.     Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case. **The proposed Interim Order describes the provision of adequate protection on account of the use of Cash Collateral. Interim Order ¶¶ 5-8.**

j.     Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **Not applicable.**

5

k.     Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate. **The proposed Interim Order includes provisions that provide for the automatic perfection and validity of replacement liens granted as adequate protection without the necessity of any further filing or recording under the laws of any jurisdiction. Interim Order ¶ 5.**

### Background

7.     On the date hereof (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases.

8.     As of the Petition Date, the Debtors entered into a *Term Sheet for the Acquisition of the Assets of the Fuhu Entities*, with Mattel, Inc. for the sale of substantially all of the Debtors' assets for $9,500,000, subject to certain adjustments, and the assumption of certain liabilities. The Term Sheet is subject to definitive documentation in the form of an asset purchase agreement. The Debtors and the Purchaser contemplate entering into that agreement shortly after the Petition Date and filing it with the Court. That agreement will be subject to higher and better bids and, ultimately, the approval of the Court. The Debtors expect to continue their current operations in the ordinary course pending the outcome of their sale process.

9.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the First Day Declaration.

## Pre-Petition Capital Structure and Indebtedness

10.     LSQ Funding Group, L.C. ("LSQ") factored certain of the Debtors'
accounts receivable under a Factoring and Security Agreement dated April 21, 2015. Although
LSQ factored only a limited subset of the receivables, it holds a first-priority security interest in
all of the Debtors' receivables. As of the Petition Date, the outstanding amount owed to LSQ on
account of factored receivables was approximately $1.3 million. There are disputes between the
Debtors and LSQ regarding the collection of the factored receivables.

11.     Obsidian Agency Services, Inc., as Agent for Tennenbaum Special
Situations Fund IX, LLC and Tennenbaum Special Situations IX-O, L.P. (collectively,
"Tennenbaum"), holds a first-priority security interest in substantially all of the assets of the
Debtors other than accounts receivable, as well as a second-priority security interest in the
Debtors' accounts receivable, under a Credit Agreement dated May 27, 2015, as amended, and a
Guaranty and Collateral Agreement of the same date. As of November 25, 2015, Tennenbaum
asserted that it was owed approximately $6.5 million by the Debtors, which includes principal of
approximately $5.4 million, accrued interest of approximately $65,000, a yield-enhancement fee
of $400,000 and an early-termination fee of $700,000. Since that date, Tennenbaum has swept
approximately $300,000 in cash from the Debtors for application to its debt.

12.     The Debtors granted two related suppliers, Fusing International, Inc. and
Hon Hai Precision Industry Co., Ltd. (collectively, "Foxconn"), purchase-money security
interests in approximately 35,000 tablets sold by Foxconn to the Debtors in October 2015. The
outstanding balance owed to Foxconn from that transaction is approximately $2 million. The

Debtors are uncertain whether Foxconn provided the notice to Tennenbaum that would have permitted Foxconn to obtain priority over Tennenbaum's security interest in the tablets sold by Foxconn. The Debtors promptly resold the tablets at issue to retailers in advance of the holiday season, generating accounts receivable. Under Section 9-324(b) of the Uniform Commercial Code, even if Foxconn's security interest in its inventory collateral had priority over Tennenbaum's, Foxconn's security interest in proceeds does not. Accordingly, Foxconn has a third-priority security interest in the accounts receivable generated by the sale of the inventory at issue. Foxconn also claims to be owed approximately $61 million on an unsecured basis arising from unrelated transactions. The Debtors have significant disputes with Foxconn arising out of Foxconn's mishandling of products intended for sale during the 2014 Christmas season and other events.

13. Mattel made a loan of $300,000 to the Debtors on or about December 4, 2015 (the "Pre-Filing Loan") to provide funding necessary to permit the Debtors to complete their preparations for the commencement of these cases, including the documentation of the proposed sale of the Debtors' assets. The Pre-Filing Loan is secured by substantially all of the Debtors' assets and was perfected by the filing of financing statements in applicable Delaware and California filing offices on or about December 4, 2015.

14. All of the Pre-Petition Lenders have or may claim to have an interest in at least a portion of the Debtors' cash, cash equivalents, and other assets included in the definition of "cash collateral" in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

DOCS_DE:203681.1 29396/001

## Need for the Use of Cash Collateral

15. The Debtors have an urgent and immediate need to use Cash Collateral. The Debtors have approximately $2.0 million in cash on hand, but they have not had unrestricted use of their cash since October 29, 2015, when Tennenbaum directed the Debtors' depository bank not to release funds and subsequently swept approximately $4.5 million of the Debtors' cash. As of the Petition Date, approximately $1.8 million of the Debtors' cash on hand was in a PayPal account that is not subject to a control agreement with Tennenbaum, but these funds are derived from orders of tablets by consumers, primarily ordered since the beginning of the holiday shopping season. The Debtors cannot presently fulfill these orders, because Tennenbaum directed the Debtors' warehouse and logistics providers not to release inventory without Tennenbaum's express consent on or about November 6, 2015. The Debtors do not believe it would be appropriate to use funds paid by consumers on pending orders for operational or other purposes unless the Debtors are able to fulfill these customers' orders. An additional component of the relief sought in this Motion, therefore, is confirmation that the Debtors' warehousing and logistics providers are authorized to release inventory at the Debtors' direction, notwithstanding the instructions received previously from Tennenbaum.

16. The Debtors' cash on hand is urgently needed for the Debtors' operations, including payroll obligations that must be funded on Wednesday, December 9 and paid on Friday, December 11. The Debtors also must satisfy obligations to Amazon Web Services, which hosts the servers that provide functionality and content to all of the Debtors' consumer products, and without which all of the Debtors' products, whether in the hands of consumers or

9

in the Debtors' inventory, will not function as intended. Despite multiple requests, Tennenbaum has refused to consent to the release of funds for these critical business purposes.

17. The Debtors project that the use of Cash Collateral will be sufficient to permit them to satisfy operating and administrative expenses until the closing of the proposed sale of their assets. Out of an abundance of caution, the Debtors have discussed a standby post-petition financing facility with Mattel, and Mattel has indicated that it would be willing to provide additional liquidity if it should be necessary, subject to definitive agreements. The Debtors are not seeking the Court's approval of this standby facility in this Motion.

18. Without access to Cash Collateral, the Debtors will not have the liquidity to operate their business, purchase new inventory, keep their installed product base operational, and fund their ordinary-course expenditures, including paying their employees and the expenses necessary to administer these chapter 11 cases, pending the contemplated sale of the Debtors' assets. Absent the use of Cash Collateral, the Debtors would be required to cease operations and liquidate on a piecemeal basis, causing irreparable harm to the Debtors and their estates. Accordingly, the Debtors have an urgent and immediate need for the use of Cash Collateral.

19. For the foregoing reasons, the Debtors have determined, in the exercise of their sound business judgment, that the Debtors require the use of Cash Collateral pursuant to the terms and conditions of the Interim Order.

DOCS_DE:203681.1 29396/001

## Basis For Relief

**A.     The Use of Cash Collateral is Necessary to Preserve the Assets of the Debtors' Estate.**

20.     The Debtors require the use of Cash Collateral to provide the Debtors with the necessary capital with which to operate their business, including funding the Debtors' obligations to employees and the maintenance of a viable installed product base, and to preserve their business as a going concern for the benefit of their estates and creditors.

21.     The Debtors will not be able to carry on the operation of their business without the use of Cash Collateral. The Debtors' ability to maintain their business is dependent on their ability to continue to operate, and the Debtors cannot operate unless they can fund payments for postpetition inventory, services, and other operating expenses. The use of Cash Collateral thus is essential to the Debtors' continued viability and the value of their business as a going concern and will provide the Debtors with the opportunity to preserve their business so that the contemplated going-concern sale process can be effectuated.

22.     The alternative in this case is "to force the debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of *all* classes of creditors and other constituencies involved in this case." *In re Dynaco Corp.,* 162 B.R. 389, 396 (Bankr. D.N.H. 1993). Because this result would be at fundamental odds with the rehabilitative purposes of chapter 11, approval of the Motion is warranted. *Id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (*quoting In re Prime, Inc.,* 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

DOCS_DE:203681.1 29396/001

23.     As debtors in possession, the Debtors have a fiduciary duty to protect and maximize their estates' assets. *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004). As noted above, the Debtors require the use of Cash Collateral to continue their operations, preserve their going-concern value, and conduct an orderly chapter 11 sale process.

**B.      The Pre-Petition Lenders Are Adequately Protected**

24.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (A) each entity that has an interest in such cash collateral provides consent, or (B) the court approves the use of cash collateral after notice and a hearing. *See* 11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

25.     Neither section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see also General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 989-90 & n.4 (Bankr. D. Utah 1982).

DOCS_DE:203681.1 29396/001

26.     The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision, *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626 (1988). For the meaning of "value of such entity's interest," the Supreme Court was guided by section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356 (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312. *We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same.*

*Id.* at 630 (emphasis added).

27.     *Timbers* teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral."

28.     Mattel supports the use of Cash Collateral by the Debtors. The interests of the other Pre-Petition Lenders are adequately protected under Sections 363(c)(2)(B) for the following reasons. First, the Debtors intend to preserve value by maintaining operations as a going concern and, as a result, the viability of the Debtors' products in inventory and in the hands of consumers. *See In re Salem Plaza Associates*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby

13

"preserv[ing] the base that generates the income stream," provided adequate protection to secured creditor). Any potential going-concern sale that would maximize the value of the Debtors' assets would go by the wayside in the event that the Debtors' operations were abruptly terminated and their customer goodwill destroyed. Continued operations are far more likely to maintain or increase underlying collateral value, as compared with the loss of value that could result from a debtor's inability to operate in the ordinary course. *See In re Jim Kelly Ford of Dundee, Ltd.*, 14 B.R. 812 (N.D. Ill. 1980) (lender was adequately protected because it benefited from the difference between the average price of a car sold at retail and the average price if the same car were sold at a wholesale auction).

29.     Second, the use of Cash Collateral will enable the Debtors to conclude a sale of their assets at a price that will allow the payment in full of at least the secured claims of LSQ and Tennenbaum.

30.     Third, the Pre-Petition Lenders will be adequately protected through the grant of adequate protection under the Interim Order. Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property," *See* 11 U.S.C. § 361.

31.     LSQ in particular is adequately protected by a substantial equity cushion. Although LSQ factored only a limited subset of the Debtors' receivables, it holds a first-priority security interest in all of the Debtor's receivables. As of the Petition Date, the outstanding

14

amount owed to LSQ on account of factored receivables is approximately $1.3 million, while the book value of the Debtor's receivables (net of reserves and other reductions) is approximately $5.3 million. Although the Debtor's receivables are projected to fluctuate in the ordinary course of the Debtor's operations, they are not expected to be less than $1.6 million at any time during the Budget period, even after the collection of the actual receivables factored by LSQ. *See In re Fortune Smooth (U.S.), Ltd.*, No. 93-40907, 1993 WL 261478, at *6 (Bankr. S.D.N.Y. July 6, 1993) ("[I]n appropriate circumstances an equity cushion in and of itself can constitute adequate protection."); *In re Las Torres Development, LLC*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009) ("Given the sufficient equity cushion on this case, the Court concludes that it may authorize the Debtors to use the Lender's cash collateral…."). The Interim Order also provides that the Debtors will escrow the proceeds of the receivables against which LSQ loaned funds pending the resolution of disputes between the Debtors and LSQ, and those funds in escrow will provide ample protection of LSQ's interest.

32.    Tennenbaum also is adequately protected by an equity cushion, as evidenced by Mattel's pending offer to purchase the assets of the Debtors for an amount that exceeds the value of Tennenbaum's interest. In addition, much of Tennenbaum's collateral does not constitute Cash Collateral and is not declining in value, including intellectual property, equipment, general intangibles, and commercial tort claims. The Interim Order also provides for monthly payments of interest to Tennenbaum at the default rate of interest under its loan documents as further adequate protection of its interest.

33.     Foxconn's security interest in particular receivables is part of a larger dispute between Foxconn and the Debtors.  It also is unclear whether Foxconn's lien is a secured claim entitled to adequate protection, because it is junior to both LSQ's and Tennenbaum's interests in accounts.  *See* 11 U.S.C. § 506(a).  Foxconn's collateral will be exhausted by LSQ's and Tennenbaum's recovery unless Foxconn can require the senior creditors to marshal their collateral.  But in any event, the pending sale transaction will provide Foxconn with adequate protection because it will set the market price for the Debtors' assets and permit Foxconn to recover the value, if any, of its interest in those assets as of the Petition Date.

34.     The Debtors believe that the proposed adequate protection described herein is fair and reasonable and will compensate the Pre-Petition Lenders for any possible diminution in value of their respective interests in the Debtors' assets.  Given the likely significant value that the Debtors stand to lose in the event that they are denied access to the use of Cash Collateral, the proposed protections are wholly appropriate and justified.

**C.     The Debtors' Warehouse and Logistics Providers Should Be Authorized to Release Inventory.**

35.     The Debtors will be in a position to use Cash Collateral meaningfully and to generate additional cash only if they are able to ship inventory and to satisfy pending orders from retailers and consumers.  Accordingly, the Debtors request that the Court decree that notwithstanding any notice or demand by Tennenbaum, any warehouseman, logistics provider, bailee, or other person in possession of the Debtors' inventory is authorized to release and ship inventory as directed by the Debtors.

## **Interim Order and Final Hearing**

36.      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

37.      The urgent need to preserve the Debtors' business, and avoid immediate and irreparable harm to the Debtors' estates, makes it imperative that the Debtors be authorized to use Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue their operations and administer the Debtors' chapter 11 cases. Without the ability to obtain access to Cash Collateral, the Debtors would be unable to meet their post-petition obligations and would be unable to fund their operational needs, thus causing irreparable harm to the value of the Debtors' estate and ending the Debtors' efforts to preserve their business as a going concern.

38.      Accordingly, the Debtors respectfully request that, pending the Final Hearing, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding.

## **Notice**

39.      Notice of this Motion will be provided to: (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on a non-consolidated basis, and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i) (together, the "Notice Parties").

DOCS_DE:203681.1 29396/001

## Notice with Respect to Final Hearing

40.     Pursuant to Bankruptcy Rule 4001, the Debtors request that they be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Order, by hand or overnight mail or courier service (or for those set up to receive electronic transmission, by electronic transmission), upon the Notice Parties. The Debtors submit that such notice is sufficient and request that this Court find that no further notice of the Final Hearing is required.

## No Prior Request

41.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, based upon the foregoing, the Debtors request entry of the Interim Order and the Final Order under sections 105, 361, 363, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2, (i) authorizing the Debtors to (a) use cash

collateral and (b) provide adequate protection to the Pre-Petition Lenders; (ii) confirming

the Debtors' ability to sell inventory; and (iii) granting such other and further relief that may

be just and appropriate.

Dated: December 7, 2015

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira Kharasch (CA Bar No. 109084)
Michael R. Seidl (DE Bar No. 3889)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302-652-4100
Facsimile: 302-652-4400
E-mail:jpomerantz@pszjlaw.com
       ikharasch@pszjlaw.com
       mseidl@pszjlaw.com
       crobinson@pszjlaw.com

-and-

**BRYAN CAVE LLP**
Robert J. Miller (AZ#013334) *(pro hac vice pending)*
Two N. Central Ave., Suite 2200
Phoenix, Arizona 85004
T: 602-364-7000
F: 602-364-7070
Email: rjmiller@bryancave.com

-and-

Kerry A. Moynihan (SBN 25057) *(pro hac vice pending)*
3161 Michelson Drive, Suite 1500
Irvine, California 92612
T: 949-223-7000
F: 949-223-7100
Email: kerry.moynihan@bryancave.com

-and-

Brian C. Walsh (MO#58091) *(pro hac vice pending)*
Laura Uberti Hughes (MO#60732) *(pro hac vice pending)*
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
T: 314-259-2000
F: 314-259-2020
Email:    brian.walsh@bryancave.com
          laura.hughes@bryancave.com

*Proposed Counsel for the Debtors and Debtors in Possession*

DOCS_DE:203681.1 29396/001

# **EXHIBIT 1**

## **Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., *et al.*,[1] | ) | Case No. 15-12465 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

Re: Docket No. __

**INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL,
(B) CONFIRMING DEBTORS' ABILITY TO SELL INVENTORY,
(C) GRANTING ADEQUATE PROTECTION TO
PRE-PETITION LENDERS, AND (D) SETTING A FINAL HEARING**

Upon consideration of the Motion (the "Motion")[2] filed by Fuhu, Inc. and Fuhu

Holdings, Inc. (the "Debtors"), the above-captioned debtors and debtors in possession, seeking,

inter alia, (a) authority pursuant to sections 105, 361, 363, and 507 of title 11 of the United States

Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure, for the Debtors to use Cash Collateral (as defined below), and the Court having

subject-matter jurisdiction to consider the Motion and the relief request therein pursuant to 28

U.S.C. § 1334; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to (a) the United States Trustee, (b) all

creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United

States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on

a non-consolidated basis, and (e) all other creditors and parties in interest requesting notice under

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

[2] Capitalized terms not defined in this Interim Order shall have the same meaning as set forth in the Motion.

Bankruptcy Rule 2002(i); and no other or further notice needing to be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    Grant of Motion.  The Motion is granted on an interim basis, as set forth below.

2.    Authority to Use Cash Collateral.  Subject to the terms and conditions set forth in this Interim Order, and notwithstanding the terms of any control agreement with or notice provided by Tennenbaum, the Debtors are authorized to use Cash Collateral from the date of entry of this Order through and including the earliest of (i) the entry of a final order on the Motion; (ii) March 6, 2016; (iii) the dismissal of the Debtors' Chapter 11 cases; (iv) the conversion of these case to cases under Chapter 7 of the Bankruptcy Code; (v) the entry of an order reversing, vacating, or otherwise modifying this Order; or (vi) the appointment of a trustee under Section 1104(a) of the Bankruptcy Code or an examiner with expanded powers.

3.    Budget.  The Debtors are authorized to use Cash Collateral for the purposes and in the amounts listed in the budget attached hereto as **Attachment 1** (the "Budget"), provided that the Debtors shall not be authorized to use Cash Collateral for any payment on or of obligations arising before the Petition Date unless expressly authorized by order of this Court after notice and a hearing.  The Debtors may use Cash Collateral to pay items which exceed budgeted line items, subject to variances of  (i) 20% of total receipts and (ii) 20% of total

2

disbursements, tested on a rolling 3-week basis, with no testing during the first 3 weeks after the Petition Date ("Permitted Variances"). The Budget may be amended with the approval of the Court after notice and a hearing.

4. Fees of United States Trustee and Professionals. The Debtors may use Cash Collateral to pay (i) fees owing to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) fees and expenses awarded by this Court to professionals retained in this case by the Debtors or an official committee of unsecured creditors (the "Committee") for services provided during the term of this Interim Order, to the extent set forth in the Budget. So long as the Debtors' right to use Cash Collateral has not expired, the Debtors shall be authorized to transfer to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "Expense Reserve Account"), on a weekly basis, the amounts that such professionals may be paid pursuant to the Budget for such week. Such funds shall be held for the benefit of such professionals, to be applied to the fees and expenses of such professionals that are approved for payment pursuant to one or more orders of the Court. Any fees and expenses payable to professionals shall be paid first out of the Expense Reserve Account. To the extent that the fees and expenses of such professionals that are allowed pursuant to one or more orders of the Court are less than the amounts funded into the Expense Reserve Account, the excess amounts in the Expense Reserve Account shall be remitted to the Debtors and shall subject to the applicable liens of the Pre-Petition Lenders. Notwithstanding the foregoing, the Debtors shall use cash and cash equivalents which do not constitute Cash Collateral (including but not limited to the use of retainers held by any professional for the payment of approved fees and expenses of such professional), if any, for the payment of expenses and obligations, whether in the Budget or otherwise, before using Cash Collateral for the payment of such expenses and obligations.

3

5.     <u>Replacement Liens</u>.  As adequate protection of the interests, if any, of the Pre-Petition Lenders in Cash Collateral, each of the Pre-Petition Lenders shall be and hereby is granted valid, perfected, binding, and enforceable replacement liens on and security interests in all assets of the Debtors and their estates of the same types and kinds as those assets in which the applicable Pre-Petition Lender held valid and non-avoidable liens or security interests as of the Petition Date, whether now existing or hereafter acquired (collectively, the "<u>Replacement Liens</u>").  The Replacement Liens shall have the same relative priority as the Pre-Petition Lenders' liens and security interests on the Petition Date and shall secure the amount by which the value of the applicable Pre-Petition Lender's interest in its collateral decreases as a result of the use of Cash Collateral or the imposition of the automatic stay in this case.  The Replacement Liens are automatically deemed perfected upon entry of this Order without the necessity of any Pre-Petition Lender's taking possession or filing financing statements or other documents.  The Replacement Liens shall not encumber any claim or cause of action arising under Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").

6.     <u>Insurance</u>.  As further adequate protection of the Pre-Petition Lenders' interests, if any, in Cash Collateral, the Debtors shall maintain property and casualty insurance with financially sound and reputable insurance companies on all personal property of the Debtors' estates in an amount not less than the value of such property on the Petition Date.

7.     <u>Additional Adequate Protection for LSQ</u>.  As further adequate protection of LSQ's interests, if any, in Cash Collateral, if and to the extent that the Debtors collect the proceeds of any accounts receivable against which LSQ extended credit to the Debtors, the Debtors shall segregate and hold such proceeds in escrow, pending resolution of any disputes between the Debtors and LSQ.

4

8.      Additional Adequate Protection for Tennenbaum.  As further adequate protection of Tennenbaum's interests, if any, in Cash Collateral, the Debtors shall make monthly payments of interest to Tennenbaum at the default rate of interest under Tennenbaum's pre-petition loan documents.

9.      Release of Inventory.  Notwithstanding any notice or demand by Tennenbaum, any warehouseman, logistics provider, bailee, or other person in possession of the Debtors' inventory is hereby authorized to release and ship inventory as directed by the Debtors.

10.     Segregation of Cash Collateral.  The Debtors shall segregate the Cash Collateral from any cash that is not Cash Collateral, as required by Section 363(c)(4) of the Bankruptcy Code.

11.     Reporting Requirements.  During the term of this Interim Order, the Debtors shall provide the following written reports to the Pre-Petition Lenders:  (i) monthly operating reports filed with this Court; and (ii) by the Friday following the end of a particular business week, an accounts-receivable aging and a comparison of actual receipts and expenditures to amounts reflected in the Budget, each as of the end of the prior week.

12.     Preservation of Rights.  Nothing in this Interim Order represents a determination that any of the Pre-Petition Lenders has a valid claim against the Debtors or a valid, non-avoidable lien on or security interest in any assets of the Debtors or their estates.  The Debtors' right to object to any claim, pursue any Avoidance Action, or otherwise seek appropriate relief against the Pre-Petition Lenders is preserved.

13.     Further Relief.  Except as specifically set forth herein, nothing in this Interim Order shall (i) limit the rights of the Debtors or the Pre-Petition Lenders to the relief granted herein; (ii) impair any of the Pre-Petition Lenders' right to relief under Section 507(b) of the

5

Bankruptcy Code if the protection provided in this Interim Order proves to be inadequate; or (iii) bar the Debtors or the Pre-Petition Lenders from seeking other and further relief in this case.

14.     <u>Binding Effect</u>. The terms and provisions of this Interim Order shall be binding upon and inure to the benefit of the Debtors, their estates, the Pre-Petition Lenders, and their successors and assigns, including any trustee appointed in this case.

15.     <u>Effectiveness</u>. This Interim Order shall become effective upon its entry by the Clerk of the Court.

16.     <u>Subsequent Hearing: Procedure for Objections and Entry of Final Order</u>. The Motion is set for a final hearing before this Court at _____ __.m. on December __, 2015 (the "<u>Final Hearing</u>"), at which time any party in interest may present any timely filed objections to the entry of a final order on the Motion. The Debtors shall promptly serve a copy of this Interim Order and notice of the Final Hearing as set forth therein, by regular mail, upon (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on a non-consolidated basis and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i). Objections to the entry of the Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801, no later than _____, 2015, which objections shall be served so that the same are received on or before 4:00 p.m. EST on such date by (i) counsel to the Debtors, and (ii) the Office of the United States Trustee, Attn., J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801. Any objections by creditors or other parties in interest to any of the

provisions of this Interim Order may be deemed waived unless filed and served in accordance with this paragraph.

17.     <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are hereby overruled.

18.     <u>Order Effective</u>.  This Interim Order shall be effective as of the date of signature by the Court.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.


IT IS SO ORDERED.



Dated:  December __, 2015

                                        _____
                                        United States Bankruptcy Judge

DOCS_DE:203681.1 29396/001

# **Attachment 1**

# **Budget**

# Fuhu, Inc.
## Weekly Cash Flow
### Forecasted Results as of December 6, 2015

(in thousands)

| Week Ending | December Week 1 12/13 | December Week 2 12/20 | December Week 3 12/27 | January Week 4 1/3 | January Week 5 1/10 | January Week 6 1/17 | January Week 7 1/24 | January Week 8 1/31 | February Week 9 2/7 | February Week 10 2/14 | February Week 11 2/21 | February Week 12 2/28 | March Week 13 3/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | |
| Outstanding AR Collections | 770 | 2,545 | 15 | 198 | 15 | 15 | 115 | 293 | - | - | - | - | - | 3,966 |
| Nabi Shop Receipts | 266 | 305 | 182 | 183 | 334 | 182 | 216 | 216 | 233 | 237 | 249 | 227 | 224 | 3,054 |
| Amazon Receipts | - | - | - | 259 | - | 328 | - | 171 | - | 210 | - | 234 | - | 1,203 |
| Other Receipts | - | - | 168 | 1,901 | 146 | 168 | 227 | 451 | 597 | 112 | 468 | 182 | 190 | 4,610 |
| **Total Receipts** | 1,036 | 2,850 | 365 | 2,540 | 496 | 693 | 558 | 1,130 | 830 | 560 | 717 | 643 | 414 | 12,833 |
| **Disbursements** | | | | | | | | | | | | | | |
| Payroll & Labor Payments | 557 | 38 | 488 | 45 | 521 | 38 | 403 | 78 | 410 | 156 | 403 | 78 | 607 | 3,817 |
| Taiwan Expenses | 100 | 100 | 100 | 100 | 100 | 300 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,500 |
| Cost of Sales | 323 | 340 | 657 | 142 | 121 | 134 | 140 | 243 | 97 | 79 | 79 | 257 | 99 | 2,708 |
| SG&A | - | 381 | 90 | 293 | 60 | 69 | 140 | 60 | 310 | 69 | 140 | 60 | 310 | 1,980 |
| Restructuring Professionals | 261 | 283 | 258 | 200 | 187 | 262 | 237 | 187 | 175 | 143 | 268 | 141 | 103 | 2,701 |
| Other Costs & Commitments | - | 250 | 250 | - | - | - | 4 | - | - | - | - | - | - | 504 |
| Rent & Office Expenditures | - | 35 | 183 | 28 | 123 | 63 | 55 | 146 | 5 | 15 | 55 | 146 | 5 | 860 |
| US Trustee Fee | - | - | - | - | - | - | 10 | - | - | - | - | - | 20 | 30 |
| LSQ Escrowed Payment | - | - | - | - | - | - | - | 1,279 | - | - | - | - | - | 1,279 |
| Reserve for Wind-Down Costs | - | - | - | - | - | - | - | - | - | - | - | - | 250 | 250 |
| Secured Loan Interest | 75 | - | - | - | 51 | - | - | - | 51 | - | - | - | 51 | 227 |
| **Total Disbursements** | 1,315 | 1,426 | 2,025 | 807 | 1,162 | 864 | 1,088 | 2,093 | 1,148 | 561 | 1,043 | 781 | 1,544 | 15,856 |
| **Net Operating Cash Flow** | (279) | 1,424 | (1,660) | 1,733 | (667) | (171) | (530) | (963) | (318) | (1) | (326) | (137) | (1,130) | (3,024) |
| **Cash** | | | | | | | | | | | | | | |
| Beginning Cash Balance [1] | 1,982 | 1,703 | 3,128 | 1,468 | 3,201 | 2,534 | 2,363 | 1,834 | 871 | 553 | 552 | 226 | 89 | 1,982 |
| Net Cash Flow | (279) | 1,424 | (1,660) | 1,733 | (667) | (171) | (530) | (963) | (318) | (1) | (326) | (137) | (1,130) | (3,024) |
| Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | 1,703 | 3,128 | 1,468 | 3,201 | 2,534 | 2,363 | 1,834 | 871 | 553 | 552 | 226 | 89 | (1,041) | (1,041) |
| **Inventory** | | | | | | | | | | | | | | |
| Total Units | 685 | 650 | 632 | 621 | 596 | 577 | 559 | 533 | 516 | 497 | 480 | 465 | 447 | |
| Total Value at Cost | 23,470 | 21,369 | 19,421 | 18,727 | 17,974 | 17,255 | 16,143 | 15,117 | 14,512 | 13,284 | 12,526 | 11,792 | 11,274 | |
| **Accounts Receivable** | 4,542 | 3,613 | 4,410 | 2,364 | 2,535 | 2,322 | 2,529 | 2,177 | 1,668 | 1,929 | 1,762 | 1,637 | 1,643 | |
| **Debt Summary:** | | | | | | | | | | | | | | |
| **Secured Loan** | | | | | | | | | | | | | | |
| Beginning Loan Balance [2] | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | |
| Paydown | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre Filing Funding | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Ending Secured Loan Balance | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | 5,016 | |
| **LSQ Factor** | | | | | | | | | | | | | | |
| Beginning Balance | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | - | - | - | - | - | |
| Escrowed Payment | - | - | - | - | - | - | - | (1,279) | - | - | - | - | - | |
| Ending LSQ Factor Balance | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | 1,279 | - | - | - | - | - | - | |

[1] Excludes restricted cash of $471K.
[2] Excludes $400K yield enhancement fee and $700K applicable early termination fee alleged per Tennenbaum notice of acceleration and reservation of rights letter dated November 27, 2015.