# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., *et al.,*[1] | ) | Case No. 15-12465 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' OPERATING ASSETS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) APPROVING BID PROTECTIONS, AND (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtors Fuhu, Inc. and Fuhu Holdings, Inc., the above-captioned debtors and

debtors in possession herein (the "Debtors"), file this motion (this "Bidding Procedures Motion")

for entry of an order: (a) approving bidding procedures for the sale of substantially all of the

Debtors' operating assets, including approval of bid protections; (b) scheduling an auction and

hearing to consider the sale of the assets; (c) approving procedures for the assumption and

assignment of certain executory contracts and unexpired leases; and (d) granting related relief,

including but not limited to approving the form and manner of notices related to the foregoing.

Concurrently herewith, the Debtors are filing the *Motion of Debtors for Order*

*(A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All of the*

*Debtors' Operating Assets; (B) Authorizing the Sale of Assets Free and Clear of All Liens,*

*Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105,*

*363(b), 363(f) And 363(m); (C) Assuming and Assigning Certain Executory Contracts and*

---

[1]    The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896);and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

DOCKET # 4

DATE 12-9-15

*Unexpired Leases; and (D) Granting Related Relief* (the "Sale Motion"), which seeks

authorization of the sale of substantially all of the operating assets of the Debtors to (i) Mattel,

Inc. (the "Stalking Horse" or the "Purchaser"), pursuant to the terms of an asset purchase

agreement (the "Agreement") to be finalized consistent with the terms of that certain *Term Sheet*

*for the Acquisition of the Assets of the Fuhu Entities* dated December 6, 2015, a copy of which is

attached to the Sale Motion as Exhibit A (the "Term Sheet"), and acceptable to the Debtors and

the Purchaser,[2] or alternatively, (ii) the highest or otherwise best bidder for such assets

determined in accordance with the proposed bid procedures.  As discussed below and in the Sale

Motion, the proposed sale is in the best interests of the Debtors, their estates, and creditors.

In support of this Bidding Procedures Motion, the Debtors respectfully state as

follows:

## Jurisdiction and Venue

1.       The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

---

[2] The Agreement will be filed as a supplement to the Sale Motion prior to hearing on the Bidding Procedures Motion.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 363, 365, 507, 1107, and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b) and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.      On the date hereof (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

6.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in

3

detail in the *Declaration of James Mitchell in Support of First Day Motions* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[3]

### The Assets to Be Sold

7.　　Pursuant to the Sale Motion, the Debtor seeks approval of the sale (the "Sale") of substantially all of its assets necessary to the operation of its business, and certain claims and liabilities to be assumed by the Stalking Horse, all as more fully set forth in the Agreement (collectively, the "Assets"). Under the Agreement, the total consideration to be paid by Purchaser to Debtor for the Assets will be the sum of $9,500,000, subject to certain adjustments, in cash, paid by a combination of a credit bid of the Pre-Filing Loan (as defined below) and cash, plus the assumption of the Assumed Liabilities (as defined in the Agreement).

8.　　In light of the marketing process already undertaken (as described below) and the additional efforts that will be made post-petition during the proposed sale process, the timing of the sale proposed herein is reasonable under the circumstances to effectuate a sale to either the Stalking Horse under the terms of the Agreement or, alternatively, to a higher and better bidder for the Assets. Furthermore, the Debtors believe that the proposed timetable for the sale is reasonable by minimizing exposure of the Debtors' business to the uncertainties associated with bankruptcy, while at the same time providing an adequate opportunity for competing bids to be solicited. The Purchaser has also imposed certain deadlines on the Debtors under the Agreement in order to accomplish the sale.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration except, as provided in footnote no. 2, those capitalized terms otherwise undefined herein that reference the Agreement shall have the meaning ascribed to them in the Agreement.

4

9.      The principal deadlines set forth in the Agreement are summarized below:

- Entry of an order approving this Motion (the "Bidding Procedures Order") by no later than **December 21, 2015**;

- Deadline to (a) submit competing bids, (b) object to the sale, (c) object to assumption/assignment and cure claims (no deadline in Agreement; the Debtor proposes **January 21, 2016**);

- Auction no later than **January 25, 2016**;

- Entry of the Sale Order no later than **January 29, 2016**; and

- Closing of the Sale to occur no later than **February 15, 2016**.

10.     In light of the pre-petition marketing efforts and the Debtors' current

financial condition, the Debtors believe that the sale process provides sufficient time to fully

expose the Assets for sale in the hope of achieving a competitive bidding process.

**Marketing Process**

11.     The Debtors commenced the process of evaluating restructuring and sale

options in September 2015.  The Debtors' senior management planned and implemented a trip to

Asia, during which they attempted to negotiate a sale with certain of the Debtors' shareholders

and major creditors.  While in Asia, the Debtors' senior management also met with and

discussed the sale opportunity with numerous other potential buyers.  These negotiations and

discussions were conducted with chief executive officers, chief acquisitions officers, and other

senior representatives of the companies involved, but they were ultimately unsuccessful.

12.     In October 2015, the Debtors increased their restructuring and sale efforts

and hired KRyS Global USA ("KRyS") as their exclusive investment banker.  Under the terms of

its agreement, KRyS was tasked with pursuing a sale or capital placement transaction for the

5

Debtors.  On October 30, 2015, as directed by the Board of Directors of the Debtors, KRyS

began a full-sale effort to contact parties to determine their interest in the acquisition of or

investment in the Debtors.  Interested parties were asked to participate in an initial discussion

with KRyS to hear about the opportunity and ask questions about the Debtors' assets.  To date,

KRyS has contacted more than 500  potential bidders, representing both financial and strategic

potential buyers.  The Debtors' management and KRyS have had in-depth discussions with high-

ranking executives at approximately 15 potential strategic or financial buyers.  Many of these

discussions have included multiple follow-up sessions and are still ongoing.  As of the Petition

Date, nine of the potential bidders have executed confidentiality agreements and have been

provided a Confidential Information Memorandum and data-room access.  KRyS continues to

contact additional potential interested parties and to work with parties to conduct due diligence.

13.     The Debtors concluded that the Purchaser was the party that offered the

greatest value for the Debtors' assets, as well as the only party that was in a position to move

quickly enough to a transaction in light of the Debtors' difficult financial circumstances.  On

December 6, 2015, the Debtors entered into the Term Sheet with the Purchaser regarding a sale

of substantially all of the Debtors' operating assets, plus the assumption of certain liabilities.

14.     The Term Sheet is subject to definitive documentation in the form of the

Agreement.  The Debtors and the Purchaser contemplate entering into the Agreement shortly

after the Petition Date and filing it with the Court.  The Agreement will be subject to higher and

better bids and, ultimately, the approval of the Court.

**Secured Debt Obligations of the Debtor**

15.     LSQ Funding Group, L.C. ("LSQ") factored certain of the Debtors' accounts receivable under a Factoring and Security Agreement dated April 21, 2015. Although LSQ factored only a limited subset of the receivables, it holds a first-priority security interest in all of the Debtors' receivables. As of the Petition Date, the outstanding amount owed to LSQ on account of factored receivables was approximately $1.3 million. There are disputes between the Debtors and LSQ regarding the collection of the factored receivables.

16.     Obsidian Agency Services, Inc., as Agent for Tennenbaum Special Situations Fund IX, LLC and Tennenbaum Special Situations IX-O, L.P. (collectively, "Tennenbaum"), holds a first-priority security interest in substantially all of the assets of the Debtors other than accounts receivable, as well as a second-priority security interest in the Debtors' accounts receivable, under a Credit Agreement dated May 27, 2015, as amended, and a Guaranty and Collateral Agreement of the same date. As of November 25, 2015, Tennenbaum asserted that it was owed approximately $6.5 million by the Debtors, which includes principal of approximately $5.4 million, accrued interest of approximately $65,000, a yield-enhancement fee of $400,000 and an early-termination fee of $700,000. Since that date, Tennenbaum has swept approximately $300,000 in cash from the Debtors for application to its debt.

17.     The Debtors granted two related suppliers, Fusing International, Inc. and Hon Hai Precision Industry Co., Ltd. (collectively, "Foxconn"), purchase-money security interests in approximately 35,000 tablets sold by Foxconn to the Debtors in October 2015. The outstanding balance owed to Foxconn from that transaction is approximately $2 million. The

7

Debtors are uncertain whether Foxconn provided the notice to Tennenbaum that would have permitted Foxconn to obtain priority over Tennenbaum's security interest in the tablets sold by Foxconn. The Debtors promptly resold the tablets at issue to retailers in advance of the holiday season, generating accounts receivable. Under Section 9-324(b) of the Uniform Commercial Code, even if Foxconn's security interest in its inventory collateral had priority over Tennenbaum's, Foxconn's security interest in proceeds does not. Accordingly, Foxconn has a third-priority security interest in the accounts receivable generated by the sale of the inventory at issue. Foxconn also claims to be owed approximately $61 million on an unsecured basis arising from unrelated transactions. The Debtors have significant disputes with Foxconn arising out of Foxconn's mishandling of products intended for sale during the 2014 Christmas season and other events.

18.    The Stalking Horse made a loan of $300,000 to the Debtors on or about December 4, 2015 (the "Pre-Filing Loan") to provide funding necessary to permit the Debtors to complete their preparations for the commencement of these cases, including the documentation of the Sale. The Pre-Filing Loan is secured by substantially all of the Debtors' assets and was perfected by the filing of financing statements in applicable Delaware and California filing offices on or about December 4, 2015.

**Continued Sale Process**

19.    While the pre-petition marketing and sale process was thorough, as discussed above, the Debtors will send notice of the Sale Motion and Bidding Procedures to all parties that the Debtors believe may be potentially interested in acquiring the Assets promptly

8

after the Court's consideration of this Bidding Procedures Motion. The Debtors will also maintain their electronic data room with key documents and company-specific information in order to streamline the due diligence process going forward. The data room has been, and will be, available to interested parties who have, or will, execute confidentiality agreements acceptable to the Debtors. The Debtors and their advisors will continue to respond to inquiries from prospective buyers through the bid deadline approved by the Court for alternative bidders to bid on the Assets and will continue to engage KRyS as their investment banker.

20.     In light of the pre-petition marketing efforts, the Debtors believe that the sale process provides sufficient time to fully expose the Assets for sale in the hope of achieving a competitive bidding process. The Debtors believe that the consummation of the Sale to the Purchaser, or other Successful Bidder, will provide their creditors and other stakeholders with the best opportunity possible for maximizing the value of the Assets. Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon.

## **Relief Requested**

21.     Pursuant to this Bidding Procedures Motion, the Debtors request that the Court, among other things:

(a)     approve the Purchaser's status as the Stalking Horse, including, pursuant to the terms of the Agreement, the requested break-up fee equal to $300,000 (the "Break-Up Fee"), an expense reimbursement not to exceed

9

$200,000 (the "Expense Reimbursement"), and reimbursement of the $300,000 Pre-Filing Loan (the "Pre-Filing Loan Reimbursement," and collectively, the "Bid Protections"), which Bid Protections will have administrative claim status in the Debtors' cases pursuant to section 503(b) of the Bankruptcy Code;

(b)    approve the Bidding Procedures attached as Annex 1 to the proposed Bidding Procedures Order;

(c)    approve the form and sufficiency of the Auction and Hearing Notice attached as Annex 2 to the proposed Bidding Procedures Order;

(d)    approve the Assignment Procedures attached as Annex 3 to the proposed Bidding Procedures Order;

(e)    approve the form and sufficiency of the Assignment Notice attached as Annex 4 to the proposed Bidding Procedures Order;

(f)    approve the form and sufficiency of the Auction Results Notice attached as Annex 5 to the proposed Bidding Procedures Order;

(g)    approve the form and sufficiency of the Creditor Notice attached as Annex 6 to the proposed Bidding Procedures Order;

(h)    approve the form and sufficiency of the Further Assignments Notice attached as Annex 7 to the proposed Bidding Procedures Order; and

(i)    schedule a hearing to consider approval of the Sale on or before January 28, 2016.

DOCS_DE:203684.1 29396/001

22.    A proposed form of Bidding Procedures Order is attached hereto as

**Exhibit A**.

## Proposed Bidding Procedures

23.    The proposed Bidding Procedures are attached to the proposed order as

Annex 1.  The Bidding Procedures are summarized as follows:[4]

(a)    Qualified Bid. To participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written offer or offers satisfying the below criteria. A "**Qualified Bidder**" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion (after consultation with any official committee of creditors appointed in these cases (the "**Committee**")) satisfies the following criteria (a "**Qualified Bid**"). The Stalking Horse (i) shall be deemed a Qualified Bidder, and the bid reflected in the Agreement shall be deemed a Qualified Bid without compliance with the requirements below, and (ii) for the avoidance of doubt, shall not be required to serve as the Backup Bidder and shall not be required to post a Deposit.

(b)    Bid Deadline. Each bid package must be delivered in written and electronic form (where available) to: (a) (i) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (ii) KRyS Global USA 57 W. 57th St., 4th Floor, New York, NY 10019 (Attn: Grant Lyon, glyon@krysglobalusa.com, (b) counsel to the Committee, if any, and (c) counsel to any secured creditor that has entered an appearance in these cases so as to **actually be received no later than January 21, 2016, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**. Complete versions of such bids, excluding confidential financial information, shall be forwarded by the Debtors to the Stalking Horse no later than 8:00 p.m. (prevailing Eastern Time) on the Bid Deadline.

---

[4]  To the extent that there are any inconsistencies between the summary description of the Bidding Procedures contained herein and the Bidding Procedures, the terms of the Bidding Procedures control.

DOCS_DE:203684.1 29396/001

(c)    Bid Package.    Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable and binding offer letter stating that (w) the bidder offers to consummate a transaction on terms and conditions no less favorable than those found in the Agreement and in an amount at least equal to the Minimum Bid (as defined below), (x) confirming that the bid will remain irrevocable and binding until five business days following the entry of the Sale Order, (y) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representations except as expressly set forth in the Modified Agreement (defined below), and (z) the Bidder shall, if designated as such in accordance with these procedures, serve as the Backup Bidder (defined below) until the consummation of the transaction pursuant to the Successful Bid; (ii) an executed copy of the Agreement as modified by the Potential Bidder in accordance with its bid ("**Modified Agreement**"); (iii) an electronic markup of the Agreement showing the revisions in the Modified Agreement, along with a clean copy of the Modified Agreement (formatted as a Microsoft Word document). The Debtors, in consultation with the Committee, shall determine whether any Modified Agreement that modifies the Agreement in any respect beyond the identity of the purchaser and the purchase price under the Agreement is a Qualified Bid.

(d)    Minimum Bid.    The amount of the purchase price in any bids for the Assets must provide for consideration in cash, and/or a valid credit-bid by a secured creditor of the Debtors, that is at least $100,000, in the aggregate, more than the purchase price contained in the Agreement ($9,500,000), plus the amount required to satisfy the Bid Protections ($800,000) (the "**Minimum Bid**").

(e)    Financial Information.    The Bid Package must contain such financial and other information that will allow the Debtors, in consultation with the Committee, to make a determination as to the bidder's financial wherewithal and its ability to consummate the transactions contemplated by the Modified Agreement, including evidence of adequate financing, any proposed conditions to closing and adequate assurance of such bidder's ability to perform under any of the Assumed Contracts and Leases. Any counterparty to an unexpired lease or executory contract that is scheduled to be assumed and assigned to the buyer may request adequate assurance information from the Debtors' counsel, and the Debtors' counsel may provide such information to contract counterparties, provided that any party receiving adequate assurance information from the

12

Purchaser or any other Qualified Bidder is required to maintain the confidentiality of such information.

(f)    <u>Regulatory Approvals</u>.    The Bid Package must describe all regulatory approvals the bidder will need and provide evidence of the bidder's ability to obtain all necessary regulatory approvals in a timely manner, if applicable.

(g)    <u>Executory Contracts and Unexpired Leases</u>.    The Modified Agreement must identify with particularity each and every proposed Assumed Contract and Lease.

(h)    <u>Additional Bid Protections</u>.  The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, or propose to modify any of the Bidding Procedures.

(i)    <u>Identity of Bidders</u>.  Each Potential Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.  Any Potential Bidder shall be required to provide such additional information as the Debtors may require regarding a Potential Bidder's ability to satisfy the requirements of the applicable regulatory authorities.

(j)    <u>Due Diligence</u>.  The bid must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the bidder (i) had an opportunity to conduct due diligence regarding the prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

(k)    <u>Consents</u>.  Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified Agreement and include evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(l)     <u>Deposit</u>. A Potential Bidder for the Assets must deposit **10% of the purchase price** under the Modified Agreement (the "**Deposit**") with the Debtors' counsel (the "**Deposit Agent**") in the form of a certified check or wire transfer at least three business days before the Auction. The Potential Bidder shall forfeit the Deposit if (i) the Potential Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein, (ii) the bidder is the Backup Bidder and withdraws the bid prior to the consummation of the Sale contemplated by the Successful Bid, or (iii) the bidder is the Successful Bidder and (x) withdraws the bid before the consummation of the sale contemplated by the Successful Bid, or (y) breaches the Agreement (or Modified Agreement, as applicable) associated with such bid. The Deposit shall be returned to the Potential Bidder (unless such Potential Bidder has forfeited its Deposit) (i) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder; (ii) if the Potential Bidder is determined to not be the Successful Bidder or the Backup Bidder at the Auction, no later than five (5) business days following conclusion of the Auction; or (iii) if the Potential Bidder is determined to be the Backup Bidder, no later than five (5) business days after consummation of the Sale to the Successful Bidder. The Deposit will not be required to be maintained in an interest-bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

24.     The Debtors shall have the right, after consultation with the Committee, to determine whether a bid meeting the requirements set forth in the Bidding Procedures is a Qualified Bid and shall notify Potential Bidders whether their bids have been determined to be Qualified Bids, as soon as possible, and prior to the Auction. For the avoidance of doubt, the Purchaser is a Qualified Bidder, and the Agreement constitutes a Qualified Bid. After the Debtors determine which bids are Qualified Bids, the Debtors shall so notify the Purchaser.

25.     In the event that the Debtors timely receive more than one Qualified Bid (other than the Purchaser's Agreement), the Debtors shall conduct the Auction with respect to the Assets. The Auction will take place at the Delaware offices of Pachulski Stang Ziehl &

14

Jones, LLP located at 919 North Market Street, 17th Floor, Wilmington, DE 19801, starting at

10:00 a.m. (prevailing Eastern Time) on January 25, 2016, or at such other place, date and time

as may be designated by the Debtors, in consultation with the Committee, at or prior to the

Auction.  The Auction shall be governed by the following procedures:

(a)    Participation.  Qualified Bidders shall be entitled to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative. At least one day prior to the commencement of the Auction, each Qualified Bidder must confirm in writing that it will participate in this Auction; provided, however, that in the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. Representatives of, and counsel for, the Committee and any other party in interest shall be permitted to attend the Auction.

(b)    Anti-Collusion.  At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged and will not engage in any collusion with any other Qualified Bidder with respect to the bidding or the Sale.

(c)    Conduct of Auction.  The Auction will be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid.

(d)    Bidding.  Bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted prior to the Auction; Qualified Bidders for all of the Assets may then submit successive bids in increments of $100,000 (the "**Bid Increment**").  Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

(e)    Successful Bid.  If an Auction is conducted, it shall continue until the Debtors determine, in consultation with the Committee, which offer is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (such bid or bids, as applicable, the "**Successful Bid**"); provided, however, that when evaluating any bid submitted by the Purchaser, such bid shall be deemed to include the full amount of the Bid Protections; provided further that in the event the Purchaser's last bid is higher or otherwise better than any bid submitted by a Qualified Bidder, the Purchaser's bid (as per the Purchaser's Agreement (as existing or modified at the Auction) shall be deemed to

15

be the Successful Bid. The Qualified Bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, as applicable, together with any changes made thereto by the Successful Bidder at the Auction. Within one business day after the conclusion of the Auction, but in any event prior to the commencement of the Sale Hearing (as defined below), the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

(f)     Backup Bid. At the conclusion of the Auction, the Debtors will also announce the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "**Backup Bid**"); provided, however, that the Stalking Horse shall not be the Backup Bid unless the Stalking Horse expressly agrees. The Qualified Bidder submitting such Backup Bid shall become the "**Backup Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, together with any changes made thereto by the Backup Bidder at the Auction. *The Backup Bid shall remain open and irrevocable until the consummation of the Sale of the Assets pursuant to the Successful Bid,* provided that if the Purchaser is the Back-Up Bidder, its bid shall only remain open until the Outside Date (as defined below). In the event the Backup Bidder fails to comply with the requirements of this paragraph, it will be deemed to have forfeited its Deposit. The Backup Bidder's Deposit will be returned by the Debtors upon the earlier of the following: (i) the Outside Date, or (ii) immediately following consummation of the Successful Bid. Notwithstanding any other provision contained herein, the Purchaser or any other bidder shall remain as Backup Bidder only through February 15, 2016 (the "**Outside Date**").

26.     In the event that the Debtors choose a Successful Bidder or Backup Bidder other than the Purchaser at the Auction or the terms of the proposed Sale are modified at the time of the Auction, the Objection Deadline solely with respect to (i) the Debtors' choice of such alternative Successful Bidder or Backup Bidder, or the modifications to the terms of the Sale to the Successful Bidder and (ii) cure amounts under the Assumed Leases and Contracts, to the extent such party did not receive notice of such cure amounts prior to the Auction, must be filed with the Court at 4:00 p.m. Eastern time on the first business day prior to the Sale Hearing.

DOCS_DE:203684.1 29396/001

**Auction and Hearing Notice**

27.     On a date no later than two business days following entry of the Bidding

Procedures Order, the Debtors shall mail the notice of the proposed sale of the Assets (the

"Auction and Hearing Notice") in the form approved in the Bidding Procedures Order by first

class mail, postage prepaid, to (a) any party requesting service in this case, (b) all counterparties

to the Assumed Contracts and Leases, (c) all potential purchasers identified by the Debtors or

their agents, and (d) any other party known to the Debtors to have or assert an interest in any of

the Assets.

**Notice of Sale Hearing**

28.     As noted above, the Debtors propose that the Auction occur on **January

25, 2016**, and that the Sale Hearing occur on **January 28, 2016**.  The Debtors propose that

objections, if any, to the Sale Motion be filed on or before 4:00 p.m. on **January 21, 2016**

(prevailing Eastern Time).

29.     The Debtors requests that the Court approve the manner of notice of the

Sale Motion, the Bidding Procedures, the Auction, and the Sale Hearing, substantially in the

form attached to the Bidding Procedures Order as Annex 2, Annex 4, Annex 5, Annex 6, and

Annex 7 (the "Sale and Bid Procedures Notices"), which the Debtors will serve on the following

parties:

> (a)     the U.S. Trustee;
>
> (b)     any official appointed committee of unsecured creditors (if any);
>
> (c)     the twenty largest unsecured creditors of each of the Debtors;

(d)    all parties known by the Debtors to assert a lien on any of the Assets;

(e)    all entities who executed NDAs with the Debtors in connection with a potential acquisition of any or all of the Assets or whom the Debtors believe may have an interest in bidding;

(f)    all counterparts to executory contracts and leases with the Debtors;

(g)    the Purchaser and its counsel; and

(h)    all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure as of the date of entry of the Bidding Procedures Order (collectively, the "Sale and Bid Procedures Notice Parties").

30.    Additionally, the Debtors propose to serve the Creditor Notice (Annex 6) on all known creditors of the Debtors.

31.    The Debtors propose to serve the Sale and Bid Procedures Notices and the Creditor Notice within three (3) Business Days from the date of entry of the Bidding Procedures Order, by first-class mail, postage prepaid, on the appropriate parties. Both the Sale and Bid Procedures Notice and the Creditor Notice will provide that any party that has not received a copy of the Sale Motion or the Bidding Procedures Order that wishes to obtain a copy of such documents may make such a request, in writing, to the Debtors' counsel.

### Sale Hearing

32.    The Successful Bid and the Backup Bid (or the Purchaser's Agreement in the event the Auction is not held) will be subject to approval by the Court at the Sale Hearing, with the Assets being sold free and clear of all liens, claims, interest, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (other than the liens and interests permitted under the Agreement) with all such liens, claims, interests, and encumbrances to attach to the proceeds of

18

the Sale of the Assets, except as otherwise provided with the same validity and in the same order

of priority as they attached to the Assets prior to the Sale. Upon approval of the Backup Bid by

the Court, the Backup Bid shall remain open and irrevocable until the earlier of

(i) consummation of the Sale pursuant to the Successful Bid or (ii) the Outside Date.

33.    The Debtors request that the Court schedule the Sale Hearing on **January**

**28, 2016**. Further, the Debtors request that objections, if any, to the Sale Motion be filed no later

than 4:00 p.m. prevailing Eastern Time on **January 21, 2016**.

<u>**Closing**</u>

34.    The closing shall take place in accordance with terms of the Agreement, or

in accordance with the terms of such other agreement approved by the Court at the Sale Hearing.

**<u>Procedures for the Assumption and Assignment of Assigned Contracts</u>**

35.    Pursuant to the Agreement, the Debtors may assume and assign to the

Purchaser or other Successful Bidder certain executory contracts (the "<u>Assumed Contracts</u>") and

unexpired leases (the "<u>Assumed Leases</u>," together with the Assumed Contracts, the "<u>Assumed</u>

<u>Contracts and Leases</u>") designated to be assumed by the Debtors and assigned to the Purchaser.

In order to ensure the orderly assignment of the Assumed Contracts and Leases and the timely

resolution of objections thereto, the Debtors seek approval of the Assignment Procedures. The

following is a summary of certain provisions of the Assignment Procedures: [5]

(a)    <u>Notice of Assumed Contracts and Leases</u>. Within two business days
after entry of the Bidding Procedures Order, the Debtors will serve by
first-class mail an omnibus notice (the "**<u>Assignment Notice</u>**") on each
Counterparty to the Assumed Contracts and Assumed Leases,

---

[5] To the extent that there are any inconsistencies between the summary description of the Assignment Procedures
contained herein and the Assignment Procedures, the terms of the Assignment Procedures control.

substantially in the form attached as Annex 4 to the Bidding Procedures Order (and such party's attorney, if such attorney has filed a notice of appearance in the Debtors' chapter 11 proceedings) at the last known address available to the Debtors. The Assignment Notice shall include an exhibit that identifies (i) the name and address of the Counterparty, (ii) the specific Assumed Contract or Assumed Lease being specified, (iii), for each Assumed Lease, the premises relating to the Assumed Lease, and (iv) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Assumed Contract or Assumed Lease pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**").

The Assignment Notice shall also include (i) a description of the Purchaser and a statement as to the Purchaser's ability to perform the Debtors' obligations under the Assumed Contracts and/or Assumed Leases ("**Purchaser's Adequate Assurance**"), (ii) the date of the Objection Deadline (defined below), (iii) the date of the Auction, and (iv) the date of the Sale Hearing.

The Assignment Notice shall also be served upon (a) Counterparties, (b) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com); and (c) any other parties requesting notice in this case (collectively, the "**Notice Parties**").

(b)     Initial Objections. To the extent that any interested party wishes to object to any matter pertaining to the sale of the Assets or the assumption and assignment of an Assumed Contract or Assumed Lease, including, without limitation, Purchaser's Adequate Assurance or the Cure Amount designated in the Initial Assignment Notice, then such interested party must file a written objection (the "**Contract/Lease Objection**") with the Court no later than **January 21, 2016, at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**"), and simultaneously serve such Contract/Lease Objection on the following parties (the "Objection Parties"): (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com); (e) any other party requesting notice in this case, so that it is **actually received** by each of the foregoing parties by the Objection Deadline.

To the extent that any party-in-interest does not timely serve an Contract/Lease Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Assumed Contract or Assumed Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if any; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

(c)     Supplemental Notice of Assumed Contracts and Leases. If and only if the bid submitted by the Successful Bidder (the "**Successful Bid**") or the bid submitted by the Backup Bidder (the "**Backup Bid**") includes (i) additional executory contracts (each an "**Additional Assumed Contract**") or additional unexpired leases (each an "**Additional Assumed Lease**") to be assumed and assigned by the Debtors to either the Successful Bidder or the Backup Bidder (as the case may be), or (ii) a different Cure Amount than the one listed in the Initial Assignment Notice (such Cure Amount, an "**Amended Cure Amount**"), then the Auction Results Notice shall include an exhibit that (a) identifies the name and address of the Counterparty, (b) identifies the specific Additional Assumed Contract and/or Additional Assumed Lease being assumed and assigned, (c) identifies, for each Additional Assumed Lease, the premises relating to the Additional Assumed Lease, and (d) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Additional Assumed Contract or Additional Assumed Leases pursuant to section 365 of the Bankruptcy Code (the "**Additional Cure Amount**"). For each Amended Cure Amount, the Auction Results Notice shall include an exhibit that identifies (w) the name and address of the Counterparty, (x) the relevant Assumed Contract or Assumed Lease, (y) for each Assumed Lease, the premises relating to the relevant Assumed Lease, and (z) the Amended Cure Amount.

The Auction Results Notice shall include, to the extent the Successful Bidder or Backup Bidder is not the Purchaser, a description of the Successful Bidder and the Back-Up Bidder and, upon request, the Debtors will provide a statement as to the ability of the Successful Bidder or the Backup Bidder to perform the Debtors' obligations under the Assumed Contracts and Assumed Leases (and, to the extent applicable, the Additional Assumed Contracts and the Additional Assumed Leases) (the "**Successful Bidder's Adequate Assurance**" or the "**Backup Bidder's Adequate Assurance**") and such statement shall be kept confidential to the extent required by the Successful Bidder or the Backup Bidder.

21

(d)      Supplemental Objections. To the extent that any interested party wishes to object to (i) the assumption of an Additional Assumed Contract or Additional Assumed Lease; (ii) the Successful Bidder's or the Backup Bidder's Adequate Assurance designated in the Auction Results Notice, if the Successful Bidder or Backup Bidder is not the Purchaser; or (iii) to the selection of an alternative purchaser as a result of the Auction, such party shall file a written objection (the "**Supplemental Sale Objection**") with the Court no later than **January 28, 2016 at 4:00 p.m. (prevailing Eastern Time)** (the "**Supplemental Objection Deadline**"), and serve such an objection on the Objection Parties so that it is **actually received** by the Supplemental Objection Deadline.

To the extent that any interested party wishes to object to an Amended Cure Amount or Additional Cure Amount, such party shall file a written objection (the "**Supplemental Cure Objection**") with the Court no later than the Supplemental Objection Deadline, and serve such an objection on the Objection Parties so that it is actually received by the Supplemental Objection Deadline.

To the extent that any interested party does not timely serve (x) a Supplemental Sale Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Additional Assumed Contract or Additional Assumed Lease; (ii) agreed that the Successful Bidder and the Backup Bidder have provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) agreed to the terms of the Sale Order; and (iv) waived any and all objections in connection with items (i) through (iii) hereof, or (y) a Supplemental Cure Objection as set forth above, such party will be deemed, as applicable, to have (i) consented to the relevant Additional Cure Amount or Amended Cure Amount, if any; (ii) agreed to the terms of the Sale Order; and (iii) waived any and all objections in connection with items (i) through (ii) hereof.

(e)      Resolution and Adjudication of Objections. Upon filing of an objection by a Counterparty, the Debtors and/or the Purchaser will contact the objecting Counterparty to attempt to consensually resolve any timely served objection. If the Debtors and/or the Purchaser are unable to resolve an objection in response to the Initial Assignment Notice or the Auction Results Notice, (i) to the extent such objections relate to the adequate assurance of future performance by the Purchaser or Successful Bidder (each an "**Adequate Assurance Objection**"), such objections will be heard at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Bankruptcy Court) or (ii) to the extent such objections relate to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, such objections will be heard at a

22

hearing (the "**Cure Objection Hearing**") to be scheduled by the Court at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Bankruptcy Court).

In the event an objection relates solely as to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, (each a "**Cure Objection**"), then such objecting party will be deemed to consent to the assumption of the related executory contract or unexpired lease and its assignment to the Purchaser, notwithstanding such objection. In the event that the Debtors and/or the Purchaser are unable to resolve the Cure Objection prior to the Cure Objection Hearing, the Purchaser may elect not to request assumption and assignment of the related executory contract or unexpired lease as part of the Sale.

On or as promptly after the Closing as practical, the Cure Amounts, Amended Cure Amounts, or Additional Cure Amounts to which no objections have been filed, or to which the Purchaser and applicable Counterparties have agreed shall be paid by pursuant to the Agreement.

Payment of the undisputed cure amounts shall be deemed to discharge the obligation of the Debtors and the Purchaser to: (i) cure any defaults under the Assumed Contracts and Leases; and (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, any non-Debtor party to the Assumed Contracts and Leases for any actual pecuniary loss resulting from any default thereunder.

(f)     <u>Further Assignments</u>.  Without limiting any rights of the Purchaser set forth in the Agreement, during the period between the Auction and the Bid Deadline, the Purchaser may designate additional executory contracts or unexpired leases for assumption by the Debtors and assignment to the Purchaser (the "**Further Assignments**"). The Debtors shall serve by first-class mail an omnibus notice (the "**Further Assignments Notice**") on each Counterparty to the Further Assignments, substantially in the form attached as Annex 7 to the Bidding Procedures Order.  To the extent that any interested party wishes to object to any matter pertaining to the Further Assignments, then such interested party must file a written objection (a "**Further Assignment Objection**") with the Court no later than at **<u>4:00 p.m. (prevailing Eastern Time) on the fifteenth day after service of the Further Assignments Notice</u>**.  In the event that a Further Assignment Objection is filed, such objections will be heard at a hearing to be scheduled by the Bankruptcy Court.

36.     Without limiting any rights of the Purchaser set forth in the Agreement,

the Purchaser may add to the list of Assigned Contracts for assumption and assignment up until

five business days before the Sale Hearing, and the Purchaser may remove agreements from the list of Assigned Contracts at any time prior to the Closing. The non-debtor party or parties to any such deleted Assigned Contract will be notified of such deletion by written notice mailed within two (2) business days of such determination.

37.    The Debtors and the Purchaser or Successful Bidder shall be responsible for payment of all Cure Amounts per the terms of the Agreement. The Purchaser or the Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assigned Contract. Objections to the adequate assurance of future performance of a Successful Bidder may be raised and considered at the Sale Hearing.

38.    Except to the extent otherwise provided in the Agreement or the agreement entered into with the Successful Bidder, subject to the payment of any Cure Amounts, the assignee of the Assigned Contracts will not be subject to any liability to the assigned contract Counterparty that accrued or arose before the closing date of the sale of the Assets, and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to 11 U.S.C. § 365(k).

### Approval of Bid Protections, the
### Bidding Procedures, and the Assignment Procedures is Appropriate

39.    As indicated above, the Debtors request that the Court approve the Bid Protections in their entirety. To compensate the Purchaser whose bid will be subject to higher or

better offers, the Debtors seek approval of the Bid Protections in accordance with the terms of the Agreement.

40.    The Debtors and the Purchaser believe that the amount of the Bid Protections is reasonable, given the benefits to the Debtors' estates of having a "stalking horse" bidder by virtue of the definitive asset purchase agreement with the Purchaser, the funding extended to the Debtors by the Purchaser shortly before the commencement of these cases, and the risk to the Purchaser that a third-party offer may ultimately be accepted, and that approval of the Bid Protections under the terms of the Agreement (including the administrative claim status thereof) is necessary to preserve and enhance the value of the Debtors' estates. The Debtors believe that the agreement to pay the Bid Protections on the terms of the Agreement is necessary to induce the Purchaser to enter into the transactions encompassed by the Agreement and thus to enable the Debtors to obtain the highest and best possible price for the Assets. Furthermore, the Debtors believe that the Bid Protections are fair and reasonable provision under all the circumstances.

41.    The Bidding Procedures are reasonably calculated to encourage a buyer to submit a final bid within the range of reasonably anticipated values. The Bid Protections will encourage competitive bidding and will potentially lead to further competition and the establishment of a baseline against which higher or otherwise better offers can be measured.

42.    The Assignment Procedures provide fair and adequate notice to the counterparties of the Assumed Contracts and Leases and provide for a fair resolution of any

objection related to the Cure Amount or demonstration of adequate assurance of future performance by the Purchaser.

43.    Bidding incentives encourage a potential purchaser to invest the requisite time, money and effort to negotiate with the Debtors and perform the necessary due diligence attendant to the acquisition of the Debtors' assets, despite the inherent risks and uncertainties of the chapter 11 process.  Historically, bankruptcy courts have approved bidding incentives similar to the Bid Protections, under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment.  *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal quotation marks and citation omitted).

44.    The Third Circuit has established standards for determining the appropriateness of bidding incentives in the bankruptcy context.  *In Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999), the court held that even though bidding incentives are measured against a business judgment standard in nonbankruptcy transactions, the administrative expense provisions of Bankruptcy Code § 503(b) govern in the bankruptcy context.  Accordingly, to be approved, bidding incentives must provide some benefit to the Debtors' estates.  *See id.* at 533.

45.    The *O'Brien* court identified at least two instances in which bidding incentives may provide benefit to an estate.  First, benefit may be found if "assurance of a break-

up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not

have been made and without which bidding would have been limited." *Id.* at 537. Second,

where the availability of bidding incentives induces a bidder to research the value a debtor's

assets and submit a bid that serves as a minimum or floor bid on which other bidders can rely,

"the bidder may have provided a benefit to the estate by increasing the likelihood that the price at

which the debtor is sold will reflect its true worth." *Id.*

46.     Whether evaluated under the "business judgment rule" or the Third

Circuit's "administrative expense" standard, the Bid Protections are appropriate. The Agreement

and the Debtors' agreement to pay the Bid Protections pursuant to the terms thereunder is the

product of good faith, arm's-length negotiations between the Debtors and the Purchaser. The

Bid Protections are fair and reasonable in amount, and are reasonably intended to compensate for

the risk to the Purchaser of being used as a stalking-horse bidder. Similarly, the Agreement

provides a minimum bid on which other bidders can rely, thereby "increasing the likelihood that

the price at which the [Property will be] sold will reflect [its] true worth." *Id.*

47.     Finally, the Bidding Procedures are fair and reasonable procedures

reasonably intended to encourage competitive bidding, and the Bid Protections will permit the

Debtors to insist that competing bids for the Assets, made in accordance with the Bidding

Procedures, be materially higher or otherwise better than the Agreement (or competing

agreement), which is a clear benefit to the Debtors' estate.

48.     Furthermore, the Break-Up Fee, in the amount of $300,000, is

approximately 3.1% of the Purchase Price, not including the Purchaser's assumption of the

27

Assumed Liabilities, and is within the spectrum of termination fees approved by bankruptcy

courts in chapter 11 cases. *See, e.g., In re Global Motorsport Group, Inc., et al.*, (Case No. 08-

10192 (KJC) (Bankr. D. Del. February 14, 2008) (Court approved a break-up fee of

approximately 4%, or $500,000 in connection with sale); *In re Global Home Products*, Case No.

06-10340 (KG) (Bankr. D. Del. July 14, 2006) (Court approved a break-up fee of 3.3%, or

$700,000, in connection with sale); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del.,

September 27, 2000) (Court approved a break-up fee of 3.64%, or $4,000,000, in connection

with $110,000,000 sale); *In re Montgomery Ward Holding Corp., et al.*, Case No. 97-1409

(PJW) (Bankr. D. Del., June 15, 1998) (Court approved termination fee of 2.7%, or $3,000,000,

in connection with $110,000,000 sale of real estate assets); *In re Medlab, Inc.*, Case No, 97-1893

(PJW) (Bankr. D. Del. April 28, 1998) (Court approved termination fee of 3.12%, or $250,000,

in connection with $8,000,000 sale transaction); *In re FoxMeyer Corp. et al.*, Case No. 96-1329

(HSB) through 96-1334 (HSB) (Bankr. D. Del., Oct. 9, 1996) (Court approved termination fee of

7.47%, or $6,500,000, in connection with $87,000,000 sale of substantially all of debtors'

assets); *In re Edison Bros. Stores. Inc., et al.*, Case No. 95-1354 (PJW) (Bankr. D. Del., Dec. 29,

1995) (Court approved termination fee of 3.5%, or $600,000, in connection with $17,000,000

sale of debtors' entertainment division); *In re NetEffect, Inc.*, Case No. 08-12008 (KJC) (Bankr.

D. Del., Sept. 11, 2008) (Court approved break-up fee of 3%, or $240,000.00 in connection with

sale of debtor's assets for purchase price of $8,000,000); *In re Champion Enterprises, et al.*,

Case No. 09-14019 (KG) (Bankr. D. Del., Feb. 8, 2010) (Court approved break-up fee of less

than credit bid or $3,000,000.00 in connection with sale of debtor's assets for purchase price of

approximately $80,000,000); *In re Filene's Basement, Inc., et al.*, Case No. 09-11525 (MFW) (Bankr. D. Del., May 15, 2009) (Court approved break-up fee and expense reimbursement of 3.68%, or $810,000 in connection with sale of debtor's assets for purchase price of $22,000,000); *In re Western Nonwovens, Inc., et al.*, Case No. 08-11435 (PJW) (Bankr. D. Del., July 28, 2009) (Court approved break-up fee and expense reimbursement of $250,000 in connection with sale of debtor's assets for purchase price of $4,000,000 to $6,500,000 purchase price); and *In re Point Blank Solutions, Inc., et al.*, Case No. 10-11255 (PJW) (Bankr. D. Del, Oct. 5, 2011) (Court approved break-up and expense reimbursement of 3.75% or $750,000 in connection with sale of debtor's assets for purchase price of $20,000,000).

## No Prior Request

49.     No prior request for the relief sought in this Bidding Procedures Motion has been made to this or any other court.

## Notice

50.     A copy of this Motion will be provided to (a) the Office of the United States Trustee; (b) the twenty (20) largest unsecured creditors of the Debtors; (c) all parties who are known by the Debtors to assert liens with respect to the Assets, if any; (d) all entities who executed non-disclosure agreements with the Debtors in connection with a potential acquisition of any or all of the Assets or whom the Debtors believe may have an interest in bidding; (e) all counterparties to the Assigned Contracts; (f) the Purchaser and its counsel; and (g) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure.  Upon approval of this Motion, the Debtors will serve notice of the Sale Hearing, the

29

Bidding Procedures, and related matters on all of the foregoing service parties and all other known creditors of the Debtors (as proposed herein, subject to Court approval). The Debtors respectfully submit that such notice is sufficient and request that the Court find that no further notice of the relief requested herein is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated: December 7, 2015

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira Kharasch (CA Bar No. 109084)
Michael R. Seidl (DE Bar No. 3889)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        mseidl@pszjlaw.com
        crobinson@pszjlaw.com

-and-

**BRYAN CAVE LLP**
Robert J. Miller (AZ#013334) (*pro hac vice pending*)
Two N. Central Ave., Suite 2200
Phoenix, Arizona  85004
T: 602-364-7000
F: 602-364-7070
Email: rjmiller@bryancave.com

-and-

30

Kerry A. Moynihan (SBN 25057) *(pro hac vice pending)*
3161 Michelson Drive, Suite 1500
Irvine, California 92612
T: 949-223-7000
F: 949-223-7100
Email: kerry.moynihan@bryancave.com

-and-

Brian C. Walsh (MO#58091) *(pro hac vice pending)*
Laura Uberti Hughes (MO#60732) *(pro hac vice pending)*
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
T: 314-259-2000
F: 314-259-2020
Email:          brian.walsh@bryancave.com
                laura.hughes@bryancave.com

*Proposed Counsel for the Debtors and Debtors in
Possession*

31

## Exhibit A

**Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., *et al.,*[1] | ) | Case No. 15-12465 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | | |
| | | Re: Docket No. __ |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' OPERATING ASSETS,
(B) SCHEDULING AN AUCTION AND SALE HEARING, (C) APPROVING BID
PROTECTIONS, AND (D) APPROVING PROCEDURES
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

Upon the Motion (the "**<u>Motion</u>**") of Debtors Fuhu, Inc. and Fuhu Holdings, Inc.,

the above-captioned debtors and debtors in possession herein (the "**<u>Debtors</u>**"), for an order

(A) approving certain bidding procedures and bidder protections (the "**<u>Bidding Procedures</u>**") for

the sale of substantially all of the operating assets of the Debtors, (B) scheduling an auction and

sale hearing related thereto, (C) approving procedures for the assumption and assignment of

certain executory contracts and unexpired leases related thereto (the "**<u>Assignment Procedures</u>**"),

all as more fully set forth in the Motion, and (D) granting related relief, including but not limited

to approving the form and manner of notices related to the foregoing; and the Debtors having

entered into an asset purchase agreement (the "**<u>Agreement</u>**")[2] consistent with the terms of that

certain *Term Sheet for the Acquisition of the Assets of the Fuhu Entities* dated December 6, 2015

with Mattel, Inc. (the "**<u>Staking Horse</u>**" or "**<u>Purchaser</u>**"), for the sale of substantially all of the

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761).  The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA  90245.

[2]  All capitalized terms not defined herein have the meanings ascribed to them in the Agreement.

operating assets of the Debtors (as defined in the Agreement, the "**Purchased Assets**"); and the Court having subject matter jurisdiction to consider the Motion and the relief request therein pursuant to 28 U.S.C. § 1334; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the creditors appearing on the list submitted pursuant to Bankruptcy 1017, (ii) those parties asserting an interest in the Debtors' assets, and (iii) counsel to the Purchaser; and no other or further notice needing to be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(M)-(O).  The statutory predicates for the relief sought herein are 11 U.S.C. § 105, 363, and 365, and Fed. R. Bankr. Proc. 2002, 6004, 6006, 9008, and 9014.  Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      In accordance with Local Rules 6004-1 and 9006-1, the Debtors have properly filed and noticed the Motion as to the relief to be granted pursuant to this Order.  The

- 2 -

issuance and immediate effectiveness of this Order as of the date hereof is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

C.      Good and sufficient notice of the relief sought in the Motion has been given, and no further notice is required except as set forth in the Bidding Procedures with respect to the Auction and the Sale Hearing.  A reasonable opportunity to object or to be heard regarding the relief granted herein was afforded to all interested persons and entities.

D.      The Debtors have articulated good and sufficient reasons for granting the Motion to the extent provided herein, including approving the Bid Protections, the Bidding Procedures and the Assignment Procedures.

E.      The Bidding Procedures were negotiated in good faith and at arm's length, are reasonable and appropriate, and represent the best method for maximizing the return to the Estates for the Purchased Assets.

F.      The Purchaser has expended, and will likely continue to expend, considerable time, money and energy pursuing the purchase of the Purchased Assets and has engaged in extended arm's length and good faith negotiations over the terms and conditions of the Agreement, the Bidding Procedures, and the Assignment Procedures.

G.      Recognizing this expenditure of time, energy and resources, the Debtors have agreed to pay the Expense Reimbursement, the Break-Up Fee, and the Pre-Filing Loan Reimbursement ("**Bid Protections**") to the Purchaser subject to the conditions set forth in the Agreement.  The Bid Protections are (i) actual and necessary costs and expenses of preserving the Debtors' estate within the meaning of Bankruptcy Code section 503(b); (ii) commensurate to

- 3 -

the real and substantial benefit conferred upon the Debtors' estate by the Purchaser; (iii) reasonable and appropriate in light of the size and nature of the proposed sale, comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Purchaser; and (iv) necessary to induce the Purchaser to continue to pursue the purchase of the Purchased Assets.

      H.     The Debtors have demonstrated a sound business justification for authorizing the payment of the Bid Protections to the Purchaser under the terms set forth herein. The Bid Protections have been negotiated at arm's length and are reasonable under the circumstances.

**THEREFORE IT IS HEREBY ORDERED THAT:**

1.     The Bidding Procedures attached hereto as **Annex 1** are hereby authorized and approved.

2.     The form and sufficiency of the Auction and Hearing Notice attached hereto as **Annex 2** is approved.

3.     The Assignment Procedures attached hereto as **Annex 3** are authorized and approved.

4.     The form and sufficiency of the Assignment Notice attached hereto as **Annex 4** is approved.

5.     The form and sufficiency of the Auction Results Notice attached hereto as **Annex 5** is approved.

6.     The form and sufficiency of the Creditor Notice attached hereto as **Annex 6** is approved.

- 4 -

7.     The form and sufficiency of the Further Assignments Notice attached hereto as **Annex 7** is approved.

8.     The Bid Protections are approved in their entirety as set forth in the Motion or as modified by the Bidding Procedures annexed hereto as **Annex 1**.  The Debtors may pay the Bid Protections to the Purchaser as set forth in the Agreement.  The Bid Protections shall be entitled to priority as a superpriority administrative expense claim in these cases pursuant to Section 507 of the Bankruptcy Code.

9.     Objections, if any, to the sale of the Purchased Assets, the assumption and assignment of contracts and leases, and the cures thereunder, if any, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com),  (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com); (e) any other party requesting notice in this case, so that it is **actually received** by each of the foregoing parties by **4:00 p.m. (prevailing Eastern Time) on January 21, 2016** (the "**Objection Deadline**"), and service to the above parties may be by email.

10.     In the event the Debtors select a Successful Bidder or Backup Bidder other than the Purchaser at the Auction, the Objection Deadline solely with respect to the Debtors' choice of such alternative bidder(s) will be **January 28, 2016, at the time of the Sale Hearing**.

11.     The Court shall conduct the Sale Hearing and consider any unresolved objections to the Sale on **January 28, 2016 at   :    .m. (prevailing Eastern Time)** or at such other time ordered by the Court.

12.     This Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Purchased Assets, the Bid Protections, the Agreement, the Bidding Procedures, the Assignment Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.

13.     Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

Dated: _____, 2015
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## ANNEX 1 TO THE BIDDING PROCEDURES ORDER
### Bidding Procedures

## BIDDING PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE OPERATING ASSETS OF
## FUHU, INC. AND FUHU HOLDINGS, INC.

Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), as chapter 11 debtors and debtors-in-possession, have entered into that certain Asset Purchase Agreement (the "**Agreement**") for the sale of certain of their purchased assets (the "**Purchased Assets**") to Mattel, Inc. (the "**Purchaser**"), which provides, among other things, for the payment of a purchase price of $9,5000,000, subject to certain adjustments, plus the assumption of the Assumed Liabilities (as defined in the Agreement). The transaction with the Purchaser pursuant to the Agreement is referred to as the "**Sale**".

On December ___, 2015, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") granted the Debtors' motion (the "**Bidding Procedures Motion**") for an order approving the following bidding procedures (the "**Bidding Procedures**") to be employed in connection with the solicitation for higher or better bids at an auction (the "**Auction**") for the sale of the Purchased Assets (the "**Bidding Procedures Order**"), if necessary. The Bidding Procedures Order also approved certain procedures (the "**Assignment Procedures**") relating to the assumption and assignment of certain executory contracts and unexpired leases, the assumption and assignment of which will be a condition to closing the transactions contemplated by the Agreement (collectively, the "**Assumed Contracts and Leases**").

1.     **Important Dates**

| | |
|---|---|
| **Bid Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Objection Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Auction** | **January 25, 2016 at 10:00 a.m. ET** |
| **Supplemental Objection Deadline** | **January 28, 2016 at 4:00 p.m. ET** |
| **Sale Hearing** | **January 28, 2016 at _:_ _.m. ET** |

2.     **Assets to be Sold Free and Clear**

Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, hypothecations encumbrances, claims, charges, options, deeds of trust, encroachments, retentions of title, conditioned sale arrangements, restrictive covenants, rights of first offer, rights of first refusal, licenses or any other limitations,

restrictions and interests of any kind thereon and there against (collectively, the "**Claims and Interests**").

3.    **Stalking Horse**

The Agreement provides that the Stalking Horse shall act as the "stalking horse bidder" in the Auction and, if it is not the Successful Bidder, shall be entitled to a break-up fee in the amount of $300,000 (the "**Break-Up Fee**"), and reimbursement of the reasonable, documented expenses not to exceed $200,000 (the "**Expense Reimbursement**"), and reimbursement of the $300,000 Pre-Filing Loan (the "**Pre-Filing Loan Reimbursement**" and collectively, "**Bid Protections**") which are payable in accordance with the terms of the Agreement.

4.    **Mailing of the Auction and Hearing Notice**

On a date no later than two business days following entry by the Bankruptcy Court of the Bidding Procedures Order, the Debtors shall mail by first class mail (or by email as to any potential purchasers referenced below) the notice of the proposed sale of the Purchased Assets (the "**Auction and Hearing Notice**") in the form approved by the Bankruptcy Court in the Bidding Procedures Order to (a) any party requesting service in this case, (b) all counterparties to the Assumed Contracts and Leases, (c) all potential purchasers identified by the Debtors or their agents, and (d) any other party known to the Debtors to have or assert an interest in any of the Purchased Assets.

Any other party-in-interest that wishes to receive a copy of the Bidding Procedures Order and/or the Bidding Procedures Motion shall make such request in writing to Debtors' counsel. Additionally, copies may be downloaded from the Court's docket at http://ecf.deb.uscourts.gov and from the Debtors' restructuring website at: www._____._____.

5.    **Confidentiality Agreement / Due Diligence**

The Debtors may afford any interested party the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (defined below).

**Contacts for Parties interested in conducting due diligence.**

Any entity that wishes to conduct due diligence with respect to the Purchased Assets must deliver to Debtors' counsel (i) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and (ii) Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), the following: (a) an executed confidentiality agreement in form and substance satisfactory to the Debtors and which shall inure to the benefit of the Purchaser from and after a closing of the sale with the Purchaser, and (b) such information as the Debtors may determine, in consultation with any

official committee appointed in the Debtors' cases (the "**Committee**"), in its sole discretion as is required to demonstrate such entity's financial wherewithal to purchase the Purchased Assets and the ability to make a Qualified Bid (as defined below).

The Debtors may allow any party delivering such a confidentiality agreement and, if necessary, information demonstrating such party's financial wherewithal (such person or entity, a "**Potential Bidder**") to conduct due diligence with respect to the Purchased Assets.

6.    **Qualification of Bids and Bidders**

To participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written offer or offers satisfying the below criteria. A "**Qualified Bidder**" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion (after consultation with the Committee) satisfies the following criteria (a "**Qualified Bid**"). The Stalking Horse (i) shall be deemed a Qualified Bidder and the bid reflected in the Agreement shall be deemed a Qualified Bid without compliance with the requirements below, and (ii) for the avoidance of doubt, shall not be required to serve as the Backup Bidder and shall not be required to post a Deposit:

(a)    Bid Deadline. Each Bid Package (defined below) must be delivered in written and electronic form (where available) to: (a) Debtors' counsel (i) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), and (ii) KRyS Global USA., 57W 57th St., 4th Floor, New York, NY 10019 (Attn: Grant Lyon, glyon@krysglobalusa.com), (b) counsel to the Committee, if any, and (c) counsel to any secured creditor that has entered an appearance in these cases so as to **actually be received no later than January 21, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**. Complete versions of such bids, excluding confidential financial information, shall be forwarded by the Debtors to the Stalking Horse no later than 8:00 p.m. (prevailing Eastern Time) on the Bid Deadline.

(b)    Bid Package. Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable and binding offer letter stating that (w) the bidder offers to consummate a transaction on terms and conditions no less favorable than those found in the Agreement and in an amount at least equal to the Minimum Bid (as defined below), (x) confirming that the bid will remain irrevocable and binding until five business days following the entry of the Sale Order, (y) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representations except as expressly set forth in the Modified Agreement (defined below), and (z)

the Bidder shall, if designated as such in accordance with these procedures, serve as the Backup Bidder (defined below) until the consummation of the transaction pursuant to the Successful Bid; (ii) an executed copy of the Agreement as modified by the Potential Bidder in accordance with its bid ("**Modified Agreement**"); (iii) an electronic markup of the Agreement showing the revisions in the Modified Agreement, along with a clean copy of the Modified Agreement (formatted as a Microsoft Word document). The Debtors, in consultation with the Committee, shall determine whether any Modified Agreement that modifies the Agreement in any respect beyond the identity of the purchaser and the purchase price under the Agreement is a Qualified Bid.

(c)      <u>Minimum Bid</u>.  The amount of the purchase price in any bids for the Purchased Assets must provide for consideration in cash, and/or a valid credit-bid by a secured creditor of the Debtors, that is at least $100,000, in the aggregate, more than the purchase price contained in the Agreement ($9,500,000), plus the amount required to satisfy the Bid Protections ($800,000) (the "**Minimum Bid**").

(d)      <u>Financial Information</u>. The Bid Package must contain such financial and other information that will allow the Debtors, in consultation with the Committee, to make a determination as to the bidder's financial wherewithal and its ability to consummate the transactions contemplated by the Modified Agreement, including evidence of adequate financing, any proposed conditions to closing and adequate assurance of such bidder's ability to perform under any of the Assumed Contracts and Leases. Any counterparty to an unexpired lease or executory contract that is scheduled to be assumed and assigned to the buyer may request adequate assurance information from Debtors' counsel, and Debtors' counsel may provide such information to contract counterparties, provided that any party receiving adequate assurance information from the Purchaser or any other Qualified Bidder is required to maintain the confidentiality of such information.

(e)      <u>Regulatory Approvals</u>.  The Bid Package must describe all regulatory approvals the bidder will need and provide evidence of the bidder's ability to obtain all necessary regulatory approvals in a timely manner, if applicable.

(f)      <u>Executory Contracts and Unexpired Leases</u>.  The Modified Agreement must identify with particularity each and every proposed Assumed Contract and Lease.

(g)      <u>Additional Bid Protections</u>.  The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, or propose to modify any of the Bidding Procedures.

(h)    <u>Identity of Bidders</u>. Each Potential Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity. Any Potential Bidder shall be required to provide such additional information as the Debtors may require regarding a Potential Bidder's ability to satisfy the requirements of the applicable regulatory authorities.

(i)    <u>Due Diligence</u>. The bid must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the bidder (i) had an opportunity to conduct due diligence prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith.

(j)    <u>Consents</u>. Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified Agreement and include evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(k)    <u>Deposit</u>. A Potential Bidder for the Purchased Assets (other than the Purchaser) must deposit **10% of the purchase price** under the Modified Agreement (the "**Deposit**") with Debtors' counsel (the "**Deposit Agent**") in the form of a certified check or wire transfer at least three business days before the Auction. The Potential Bidder shall forfeit the Deposit if (i) the Potential Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein, (ii) the bidder is the Backup Bidder and withdraws the bid prior to the consummation of the Sale contemplated by the Successful Bid, or (iii) the bidder is the Successful Bidder and (x) withdraws the bid before the consummation of the sale contemplated by the Successful Bid, or (y) breaches the Agreement (or Modified Agreement, as applicable) associated with such bid. The Deposit shall be returned to the Potential Bidder (unless such Potential Bidder has forfeited its Deposit) (i) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder; (ii) if the Potential Bidder is determined to not be the Successful Bidder or the Backup Bidder at the Auction, no later than five (5) business days following conclusion of the Auction; or (iii) if the Potential Bidder is determined to be the Backup Bidder, no later than five (5) business days after consummation of the Sale

to the Successful Bidder.   The Deposit will not be required to be maintained in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

The Debtors shall have the right, after consultation with the Committee, to determine whether a bid meeting the requirements set forth in the Bidding Procedures is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids, as soon as possible, and prior to the Auction.  For the avoidance of doubt, the Purchaser is a Qualified Bidder and the Agreement constitutes a Qualified Bid.  After the Debtors determine which bids are Qualified Bids, the Debtors shall so notify the Purchaser.

## 7.    **Only One Qualified Bid**

If no Qualified Bids (other than Purchaser's Agreement) are submitted, the Debtors shall not hold the Auction, but shall proceed with the Sale Hearing to seek approval of the sale of the Purchased Assets to the Purchaser pursuant to the Agreement (or any modifications agreed to between the Debtors and Purchaser).

## 8.    **Auction**

In the event that the Debtors timely receive more than one Qualified Bid (other than the Purchaser's Agreement and one or more credit bids pursuant to paragraph 8(e) below), the Debtors shall conduct the Auction with respect to the Purchased Assets.  The Auction will take place at the Delaware offices of Pachulski Stang Ziehl & Jones, LLP located at 919 North Market Street, 17th Floor, Wilmington, DE 19801, starting at 10:00 a.m. (prevailing Eastern Time) on January 25, 2016, or at such other place, date and time as may be designated by the Debtor, in consultation with the Committee, at or prior to the Auction.  The Auction shall be governed by the following procedures:

(a)    Participation.  Qualified Bidders shall be entitled to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative.  Creditors shall be entitled to attend the Auction.    At least one day prior to the commencement of the Auction, each Qualified Bidder must confirm in writing that it will participate in this Auction; provided, however, that in the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith.  Representatives of, and counsel for, the Committee and any other party in interest shall be permitted to attend the Auction.

(b)    Anti-Collusion.  At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged and will not engage in any collusion with any other Qualified Bidder with respect to the bidding or the Sale.

(c)     Conduct of Auction.  The Auction will be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid.

(d)     Bidding.  Bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted prior to the Auction; Qualified Bidders for all of the Purchased Assets may then submit successive bids in increments of $100,000 (the "**Bid Increment**").  Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.  At the Auction, Purchaser shall be entitled to credit bid in an amount equal to the Bid Protections for any subsequent bid(s) it submits at the Auction.

(e)     Successful Bid.  If an Auction is conducted, it shall continue until the Debtors determine, in consultation with the Committee, which offer is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (such bid or bids, as applicable, the "**Successful Bid**"); *provided, however*, that when evaluation any bid submitted by the Purchaser, such bid shall be deemed to include the full amount of the Bid Protections; *provided further* that in the event the Purchaser's last bid is higher or otherwise better than any bid submitted by a Qualified Bidder, the Purchaser's bid (as per the Purchaser's Agreement (as existing or modified at the Auction) shall be deemed to be the Successful Bid.  The Qualified Bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, as applicable, together with any changes made thereto by the Successful Bidder at the Auction.  Within one business day after the conclusion of the Auction, but in any event prior to the commencement of the Sale Hearing (as defined below), the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

(f)     Backup Bid.  At the conclusion of the Auction, the Debtors will also announce the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "**Backup Bid**"); provided however, that the Stalking Horse shall not be the Backup Bid unless the Stalking Horse expressly agrees.  The Qualified Bidder submitting such Backup Bid shall become the "**Backup Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, together with any changes made thereto by the Backup Bidder at the Auction. ***The Backup Bid shall remain open and irrevocable until the consummation of the Sale of the Purchased Assets pursuant to the Successful Bid,*** provided if Purchaser is the Back-Up Bidder, its bid shall only remain open until the Outside Date (as defined below).  In the event the Backup Bidder fails to comply with

the requirements of this paragraph, it will be deemed to have forfeited its Deposit. The Backup Bidder's Deposit will be returned by the Debtors upon the earlier of the following: (i) the Outside Date, or (ii) immediately following consummation of the Successful Bid. Notwithstanding any other provision contained herein, the Purchaser or any other bidder shall remain as Backup Bidder only through February 15, 2016 (the "**Outside Date**").

9.      **Sale Hearing**

The Successful Bid and the Backup Bid (or the Purchaser's Agreement in the event the Auction is not held) will be subject to approval by the Bankruptcy Court after a hearing (the "**Sale Hearing**") that will take place **January 28, 2016** at __:00 __.m. (prevailing Eastern Time) and entry of an order approving such sale (the "**Sale Order**"). Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid shall remain open and irrevocable until the earlier of (i) consummation of the Sale pursuant to the Successful Bid or (ii) the Outside Date.

Objections, if any, to the Sale Motion, the assumption and assignment of contracts leases, and the cures thereunder (if any), and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel (i) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and (ii) Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice, so as to be actually received by 4:00 p.m. (prevailing Eastern Time) on **January 21, 2016** (the "**Objection Deadline**").

10.      **Supplemental Objections**

In the event the Debtors choose a Successful Bidder or Backup Bidder other than the Purchaser at the Auction or the terms of the proposed Sale are modified at the time of the Auction, the Objection Deadline solely with respect to (i) the Debtors' choice of such alternative Successful Bidder or Backup Bidder, or the modifications to the terms of the Sale to the Successful Bidder and (ii) cure amounts under the Assumed Leases and Contracts, to the extent such party did not receive notice of such cure amounts prior to the Auction, must be filed with the Court at **4:00 p.m. Eastern time on January 28, 2016.**

11.      **Consummation of the Sale**

Following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Purchased Assets, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. Thereafter, the Debtors and the Backup Bidder are authorized to immediately effect the sale of the Purchased Assets to the

Backup Bidder on the terms of the Backup Bid as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

12.    **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Purchased Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing. All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any Auction related disputes.

13.    **Additional Procedures**

The Debtors reserve the right, in consultation with the Committee, to adopt any other procedures reasonably necessary to implement the Bidding Procedures, to the extent not inconsistent with the foregoing.

## ANNEX 2 TO THE BIDDING PROCEDURES ORDER
### Auction & Hearing Notice

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF AUCTION AND HEARING TO CONSIDER
APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' OPERATING ASSETS AND PROCEDURES RELATED THERETO**

PLEASE TAKE NOTICE THAT:

      1.    <u>Introduction</u>. On _____ __, 2015, the Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), upon the motion (the "**Motion**") of Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), entered an order (the "**Bidding Procedures Order**"): (a) approving the bidding procedures and bidder protections (the "**Bidding Procedures**")[2] with respect to the sale (the "**Sale**") of substantially all of the Debtors' operating purchased assets (the "**Purchased Assets**"); (b) scheduling an auction (the "**Auction**") for the Purchased Assets and a hearing approving the sale of the Purchased Assets (the "**Sale Hearing**"); and (c) approving certain procedures (the "**Assignment Procedures**") related to the assumption and assignment of those executory contracts and unexpired leases related to the Purchased Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**"). A copy of the Bidding Procedures is annexed hereto as **Exhibit A**.

      2.    <u>Important Dates</u>. Pursuant to the Bidding Procedures and the Assignment Procedures, the Bankruptcy Court has established the following dates:

| | |
|---|---|
| **Bid Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Objection Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Auction** | **January 25, 2016 at 10:00 a.m. ET** |

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA  90245.

[2] Capitalized terms not defined herein shall have the meaning assigned to such terms in the Bidding Procedures.

| | |
|---|---|
| **Supplemental Objection Deadline** | **January 28, 2016 at 4:00 p.m. ET** |
| **Sale Hearing** | **January 28, 2016 at _:_0_.m. ET** |

3.    The Agreement.  The Debtors entered into that certain Asset Purchase Agreement for the sale of the Purchased Assets (the "**Agreement**") with Mattel, Inc. (the "**Purchaser**"), and the assignment of certain contracts and leases related thereto.  As set forth in the Bidding Procedures, the Sale of the Purchased Assets remains subject to competing offers from qualified prospective bidders.

4.    Due Diligence.  Parties interested in conducting due diligence should contact KRyS Global USA, 57 W. 57th St., 4th Floor, New York, NY 10019 (Attn: Grant Lyon, glyon@krysglobalusa.com).

5.    Submission of Bids.  To participate in the bidding process and to have a bid considered by the Debtors, each potential bidder must deliver a written offer or offers satisfying the criteria prescribed in the Bidding Procedures.  Each Bid Package must be delivered in written and electronic form (where available) to: (a) (i) Debtors' counsel Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com) and (ii) KRyS Global USA 57 W. 57th St., 4th Floor, New York, NY 10019 (Attn: Grant Lyon, glyon@krysglobalusa.com), (b) counsel to the Committee, if any, and (c) counsel to any secured creditor that has entered an appearance in these cases so as to **actually be received no later than January 21, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**.

6.    Auction.  In the event that the Debtors receive qualified bids for the Purchased Assets other than the one submitted by the Purchaser, the Debtors intend to conduct the Auction.  The Auction will take place at the Delaware offices of Pachulski Stang Ziehl & Jones, LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, starting at 10:00 a.m. (prevailing Eastern Time) on **January 25, 2016**, or such other place, date and time as may be designated by the Debtors, in consultation with the Committee (as defined in the Bidding Procedures), at or prior to the Auction.

7.    Sale Hearing.  The Bidding Procedures Order provides that the Sale Hearing will be held on **January 28, 2016 at __:00 __.m. (prevailing Eastern Time)**, before the Honorable _____, United States Bankruptcy Judge, in Courtroom __ at the United States Bankruptcy Court for the District of Delaware, 824 Market Street N, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will request that the Bankruptcy Court enter an order approving the Sale of the Purchased Assets to the prevailing bidder(s) at the Auction (or to the Purchaser in the event the Auction is not held).

8.    Objections.  Objections, if any, to the Motion (other than objections with respect to cure amounts or adequate assurance of future performance under the Assumed Contracts and Leases, which are subject to the Assignment Procedures) and any filed

supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel (i) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and (ii) Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com) (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice, so as to be actually received by **4:00 p.m. (prevailing Eastern Time) on January 21, 2016** (the "**Objection Deadline**").

        9.      <u>Supplemental Objections</u>.  Only in the event the Debtors choose a Successful Bidder or Backup Bidder other than the Purchaser at the Auction or the terms of the proposed Sale are modified at the time of the Auction, the Objection Deadline solely with respect to (i) the Debtors' choice of such alternative Successful Bidder or Backup Bidder, or the modifications to the terms of the Sale to the Successful Bidder, and (ii) cure amounts under the Assumed Leases and Contracts, to the extent such party did not receive notice of such cure amounts prior to the Auction must be filed with the Court at **4:00 p.m. (prevailing Eastern time) on January 28, 2016**.

        10.      A copy of the Bidding Procedures Order or any other document referenced herein can be viewed and obtained on the Bankruptcy Court's website at https://ecf.deb.uscourts.gov or (without charge) at www._____.

Dated: _____ __, 2016          PACHULSKI STANG ZIEHL & JONES LLP

                                    Jeffrey N. Pomerantz (CA Bar No. 143717)
                                    Michael R. Seidl (DE Bar No. 3889)
                                    919 North Market Street, 17th Floor
                                    P.O. Box 8705
                                    Wilmington, DE  19899-8705
                                    Telephone: 302/652-4100
                                    Facsimile:  302/652-4400
                                    E-mail:    jpomerantz@pszjlaw.com
                                               mseidl@pszjlaw.com

                                    -and-

                                    BRYAN CAVE LLP
                                       Robert J. Miller (AZ Bar No. 13334)
                                       Brian C. Walsh (MO Bar No. 58091)
                                       Kerry A. Moynihan (CA Bar No. 250571)
                                       Laura U. Hughes (MO Bar No. 60732)
                                       Two North Central Avenue, Suite 2200
                                       Phoenix, AZ 85004-4406
                                       Telephone:  602/364-7000
                                       Facsimile:  602/364-7070
                                       E-mail:    rjmiller@bryancave.com
                                                  brian.walsh@bryancave.com
                                                  kerry.moynihan@bryancave.com
                                                  laura.hughes@bryancave.com

                                    Proposed Counsel for the Debtors

- 4 -

**ANNEX 3 TO THE BIDDING PROCEDURES ORDER**
**Assignment Procedures**

## ASSIGNMENT PROCEDURES FOR SALE OF THE OPERATING
## ASSETS OF FUHU, INC. AND FUHU HOLDINGS, INC.

Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), as chapter 11 debtors and debtors-in-possession, have entered into that certain Asset Purchase Agreement (the "**Agreement**") for the sale of certain of their assets (the "**Purchased Assets**") to Mattel, Inc. (the "**Purchaser**"), which provides, among other things, for the payment of a purchase price of $9,500,000, subject to certain adjustments, plus the assumption of the Assumed Liabilities (as defined in the Agreement).  The transaction with the Purchaser pursuant to the Agreement is referred to as the "**Sale**".

On _____ __, 201_, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") granted the Debtors' motion (the "**Motion**") for an order approving, *inter alia*, (i) the following procedures (the "**Assignment Procedures**") relating to the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases by the Debtors as contemplated by the Sale (the "**Assumed Contracts and Leases**"), including procedures for providing notice of assignment to parties to such Assumed Contracts and Leases (each, a "**Counterparty**") and (ii) certain bidding procedures (the "**Bidding Procedures**") to be employed in connection with the solicitation for higher or better bids at an auction (the "**Auction**") of the Purchased Assets.  The Motion also sought an order approving the Sale subject to the results of the Auction (the "**Sale Order**").

    A.    **Important Dates**

| | |
|---|---|
| **Bid Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Objection Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Auction** | **January 25, 2016 at 10:00 a.m. ET** |
| **Supplemental Objection Deadline** | **January 28, 2016 at 4:00 p.m. ET** |
| **Sale Hearing** | **January 28, 2016 at _:_0_.m. ET** |

B.    **Assumed Contracts and Leases**

Pursuant to the Agreement, the Assumed Contracts and Leases consist of (i) certain executory contracts (the "**Assumed Contracts**") and (ii) unexpired leases (the "**Assumed Leases**") designated to be assumed by the Debtors and assigned to the Purchaser.

C.    **Initial Notice of Assumed Contracts and Leases**

Within two business days after entry of the Bidding Procedures Order, the Debtors will serve by first class mail an omnibus notice (the "**Assignment Notice**") on each Counterparty to the Assumed Contracts and Assumed Leases, substantially in the form attached as **Annex 4** to the Bidding Procedures Order (and such party's attorney, if such attorney has filed a notice of appearance in the Debtors' chapter 11 proceedings) at the last known address available to the Debtors. The Assignment Notice shall include an exhibit that identifies (i) the name and address of the Counterparty, (ii) the specific Assumed Contract or Assumed Lease being specified, (iii), for each Assumed Lease, the premises relating to the Assumed Lease, and (iv) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Assumed Contract or Assumed Lease pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**").

The Assignment Notice shall also include (i) a description of the Purchaser and a statement as to the Purchaser's ability to perform the Debtors' obligations under the Assumed Contracts and/or Assumed Leases ("**Purchaser's Adequate Assurance**"), (ii) the date of the Objection Deadline (defined below), (iii) the date of the Auction, and (iv) the date of the Sale Hearing.

The Assignment Notice shall also be served upon (a) Counterparties, (b) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com); and (c) any other parties requesting notice in this case (collectively, the "**Notice Parties**").

D.    **Contract/Lease Objections**

To the extent that any interested party wishes to object to any matter pertaining to the sale of the Purchased Assets or the assumption and assignment of an Assumed Contract or Assumed Lease, including, without limitation, Purchaser's Adequate Assurance or the Cure Amount designated in the Initial Assignment Notice, then such interested party must file a written objection (the "**Contract/Lease Objection**") with the Court no later than **January 21, 2016 at 4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**"), and simultaneously serve such Contract/Lease Objection on the following parties (the "**Objection Parties**"): (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases; (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly,

- 2 -

peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice in this case, so that it is **actually received** by each of the foregoing parties by the Objection Deadline.

To the extent that any party-in-interest does not timely serve a Contract/Lease Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Assumed Contract or Assumed Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if any; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

E.    **Supplemental Notice of Assumed Contracts and Leases**

The Debtors will serve by email and file with the Court an omnibus notice (the "**Auction Results Notice**") promptly after the conclusion of the Auction, substantially in the form attached as **Annex 5** to the Bidding Procedures Order, upon the Notice Parties (and their attorneys, if an attorney has filed a notice of appearance in the Debtors' chapter 11 proceeding) at the last known address available to the Debtors. The Auction Results Notice shall, *inter alia*, identify the successful bidder (the "**Successful Bidder**") and the backup bidder (the "**Backup Bidder**")[1] chosen at the Auction in accordance with the Bidding Procedures and such other information as hereinafter provided.

If and only if the bid submitted by the Successful Bidder (the "**Successful Bid**") or the bid submitted by the Backup Bidder (the "**Backup Bid**") includes (i) additional executory contracts (each an "**Additional Assumed Contract**") or additional unexpired leases (each an "**Additional Assumed Lease**") to be assumed and assigned by the Debtors to either the Successful Bidder or the Backup Bidder (as the case may be), or (ii) a different Cure Amount than the one listed in the Initial Assignment Notice (such Cure Amount, an "**Amended Cure Amount**"), then the Auction Results Notice shall include an exhibit that (a) identifies the name and address of the Counterparty, (b) identifies the specific Additional Assumed Contract and/or Additional Assumed Lease being assumed and assigned, (c) identifies, for each Additional Assumed Lease, the premises relating to the Additional Assumed Lease, and (d) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Additional Assumed Contract or Additional Assumed Leases pursuant to section 365 of the Bankruptcy Code (the "**Additional Cure Amount**"). For each Amended Cure Amount, the Auction Results Notice shall include an exhibit that identifies (w) the name and address of the Counterparty, (x) the relevant Assumed Contract or Assumed Lease, (y) for each Assumed Lease, the premises relating to the relevant Assumed Lease, and (z) the Amended Cure Amount.

The Auction Results Notice shall include, to the extent the Successful Bidder or Backup Bidder is not the Purchaser, a description of the Successful Bidder and the Back-Up

---

[1]  After entry of the Sale Order all references herein to the Purchaser shall refer to the Successful Bidder. In the event that the Backup Bidder is substituted for the Successful Bidder pursuant to the Sale Order, all references to the Purchaser shall refer to the Backup Bidder. Similarly, after entry of the Sale Order, all references herein to the Agreement shall refer to the bid submitted by the Successful Bidder.

Bidder and, upon request, the Debtors will provide a statement as to the ability of the Successful Bidder or the Backup Bidder to perform the Debtors' obligations under the Assumed Contracts and Assumed Leases (and, to the extent applicable, the Additional Assumed Contracts and the Additional Assumed Leases) (the "**Successful Bidder's Adequate Assurance**" or the "**Backup Bidder's Adequate Assurance**") and such statement shall be kept confidential to the extent required by the Successful Bidder or the Backup Bidder.

### F.    Supplemental Objections

To the extent that any interested party wishes to object to (i) the assumption of an Additional Assumed Contract or Additional Assumed Lease; (ii) the Successful Bidder's or the Backup Bidder's Adequate Assurance designated in the Auction Results Notice, if the Successful Bidder or Backup Bidder is not the Purchaser; or (iii) to the selection of an alternative purchaser as a result of the Auction, such party shall file a written objection (the "**Supplemental Sale Objection**") with the Court no later than **January 28, 2016 at 4:00 p.m.** (prevailing Eastern Time) (the "**Supplemental Objection Deadline**"), and serve such an objection on the Objection Parties so that it is **actually received** by the Supplemental Objection Deadline.

To the extent that any interested party wishes to object to an Amended Cure Amount or Additional Cure Amount, such party shall file a written objection (the "**Supplemental Cure Objection**") with the Court no later than the Supplemental Objection Deadline, and serve such an objection on the Objection Parties so that it is actually received by the Supplemental Objection Deadline.

To the extent that any interested party does not timely serve (x) a Supplemental Sale Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Additional Assumed Contract or Additional Assumed Lease; (ii) agreed that the Successful Bidder and the Backup Bidder have provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) agreed to the terms of the Sale Order; and (iv) waived any and all objections in connection with items (i) through (iii) hereof, or (y) a Supplemental Cure Objection as set forth above, such party will be deemed, as applicable, to have (i) consented to the relevant Additional Cure Amount or Amended Cure Amount, if any; (ii) agreed to the terms of the Sale Order; and (iii) waived any and all objections in connection with items (i) through (ii) hereof.

### G.    Further Assignments

Without limiting any rights of the Purchaser set forth in the Agreement, during the period between the Auction and the Bid Deadline, the Purchaser may designate additional executory contracts or unexpired leases for assumption by the Debtors and assignment to the Purchaser (the "**Further Assignments**"). The Debtors shall serve by first class mail an omnibus notice (the "**Further Assignments Notice**") on each Counterparty to the Further Assignments, substantially in the form attached as **Annex 7** to the Bidding Procedures Order. To the extent that any interested party wishes to object to any matter pertaining to the Further Assignments, then such interested party must file a written objection (a "**Further Assignment Objection**") with the Court no later than at **4:00 p.m. (prevailing Eastern Time) on the fifteenth day after**

- 4 -

**service of the Further Assignments Notice**.  In the event a Further Assignment Objection is filed, such objections will be heard at a hearing to be scheduled by the Bankruptcy Court.

H.    **Resolution and Adjudication of Objections**

Upon filing of an objection by a Counterparty, the Debtors and/or the Purchaser will contact the objecting Counterparty to attempt to consensually resolve any timely served objection.  If the Debtors and/or the Purchaser are unable to resolve an objection in response to the Initial Assignment Notice or the Auction Results Notice, (i) to the extent such objections relate to the adequate assurance of future performance by the Purchaser or Successful Bidder (each an "**Adequate Assurance Objection**"), such objections will be heard at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Bankruptcy Court) or (ii) to the extent such objections relate to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, such objections will be heard at a hearing (the "**Cure Objection Hearing**") to be scheduled by the Court at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Bankruptcy Court).

In the event an objection relates solely as to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, (each a "**Cure Objection**"), then such objecting party will be deemed to consent to the assumption of the related executory contract or unexpired lease and its assignment to the Purchaser, notwithstanding such objection.  In the event the Debtors and/or the Purchaser are unable to resolve the Cure Objection prior to the Cure Objection Hearing, the Purchaser may elect not to request assumption and assignment of the related executory contract or unexpired lease as part of the Sale.

On or as promptly after the Closing as practical, the Cure Amounts, Amended Cure Amounts, or Additional Cure Amounts to which no objections have been filed, or to which the Purchaser and applicable Counterparties have agreed shall be paid by pursuant to the Agreement.

Payment of the undisputed cure amounts shall be deemed to discharge the obligation of the Debtors and the Purchaser to: (i) cure any defaults under the Assumed Contracts and Leases; and (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, any non-Debtor party to the Assumed Contracts and Leases for any actual pecuniary loss resulting from any default thereunder.

I.    **Reservation of Rights**

The assumption and assignment of any of the Assumed Contracts and Leases is subject to Court approval and consummation of the Sale.  Accordingly, the Debtors shall be deemed to have assumed and assigned Assumed Contracts and Leases ultimately identified under the Agreement as of and effective only upon the Closing (as defined in the Agreement).  Absent a Closing that includes such Assumed Contracts and Leases, each of the Assumed Contracts and Leases shall be deemed neither assumed nor assigned/subleased and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.

## ANNEX 4 TO THE BIDDING PROCEDURES ORDER
**Assignments Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF ASSUMPTION AND ASSIGNMENT AS TO
DEBTORS OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES PURSUANT TO THE
<u>SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' OPERATING ASSETS</u>**

PLEASE TAKE NOTICE THAT:

          1.      On _____ __, 201_, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), upon the motion (the "**Motion**") of Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**") entered an order (the "**Bidding Procedures Order**"): (a) approving the bidding procedures and bidder protections (the "**Bidding Procedures**") with respect to the sale (the "**Sale**") of substantially all of the Debtors' operating assets (the "**Purchased Assets**"); (b) scheduling an auction (the "**Auction**") for the Purchased Assets and a hearing approving the sale of the Purchased Assets (the "**Sale Hearing**"); and (c) approving certain procedures (the "**Assignment Procedures**") related to the assumption and assignment of those executory contracts and unexpired leases related to the Purchased Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**").

          2.      The Debtors entered into that certain Asset Purchase Agreement for the sale of the Purchased Assets (the "**Agreement**") with Mattel, Inc. (the "**Purchaser**"), and the assignment of certain contracts and leases related thereto.

          3.      In the event that the Debtors receive additional qualified bids for the Purchased Assets, the Debtors intend to conduct the Auction with respect to the Purchased Assets. The Auction will take place at the Delaware offices of Pachulski Stang Ziehl & Jones LLP located at 919 North Market Street, 17th Floor, Wilmington, DE 19801, on **January 25, 2016** starting at **10:00 a.m.** (prevailing Eastern Time).

          4.      Attached as **Annex A** hereto is a description of the Purchaser that demonstrates the Purchaser's ability to perform the Debtors' obligations under the Assumed Contracts and/or the Assumed Leases ("**Purchaser's Adequate Assurance**").

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

5.     The Debtors hereby provide notice of their intent to assume and assign certain agreements to which the Debtors are a party, including at least one or more such agreements to which the Debtors believes you or your predecessor in interest are a party, which agreements are identified in **Annex B** hereto (singularly or collectively, the "**Assumed Agreements**"). Annex B also identifies, for each Assumed Agreement, the effective day of assignment; a description of the Assumed Agreement; the premises relating to the Assumed Agreement (if the relevant Assumed Agreement is an Assumed Lease); and the cure amount, asserted by the Debtors, that is necessary to cure any default under the relevant Assumed Agreement pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**").

6.     Nothing contained in this Notice is to be construed as an admission by the Debtors as to the character of any document denominated as an Assumed Agreement, as an executory contract or unexpired lease, or to the rights of any parties thereto. The sale of the Purchased Assets, and assumption and assignment of the Assumed Agreements will take place pursuant to the Bidding Procedures Order.

7.     To the extent that any interested party wishes to object to any matter pertaining to the assumption and assignment of an Assumed Contract or an Assumed Lease, including, without limitation, Purchaser's Adequate Assurance or the Cure Amount designated in this Notice, then such interested party must file a written objection (an "**Objection**") with the Bankruptcy Court no later than [_____] at [_____] p.m. (prevailing Eastern Time) (the "**Objection Deadline**"), and simultaneously serve such an Objection on the following parties: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice, so that it is **actually received** by the Objection Deadline.

8.     In the event the Debtors choose a Successful Bidder or Backup Bidder other than the Purchaser at the Auction or the terms of the proposed Sale are modified at the time of the Auction, the Objection Deadline solely with respect to (i) the Debtors' choice of such alternative Successful Bidder or Backup Bidder, or the modifications to the terms of the Sale to the Successful Bidder and (ii) any additional or modified Cure Amounts must be filed with the Court at **4:00 p.m. Eastern time on January 28, 2016**.

9.     To the extent that any party-in-interest does not timely serve an Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Assumed Agreement; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if any; and (iv) agreed to the terms of the Motion.

- 2 -

10.     A copy of the Bidding Procedures Order or any other document referenced herein can be viewed and obtained on the Bankruptcy Court's website at https://ecf.deb.uscourts.gov or (without charge) at: www._____.

Dated: _____ __, 2015          PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No. 143717)
Michael R. Seidl (DE Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:      jpomerantz@pszjlaw.com
                 mseidl@pszjlaw.com


-and-

BRYAN CAVE LLP
Robert J. Miller (AZ Bar No. 13334)
Brian C. Walsh (MO Bar No. 58091)
Kerry A. Moynihan (CA Bar No. 250571)
Laura U. Hughes (MO Bar No. 60732)
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone:  602/364-7000
Facsimile:  602/364-7070
E-mail:      rjmiller@bryancave.com
        brian.walsh@bryancave.com
        kerry.moynihan@bryancave.com
        laura.hughes@bryancave.com

Proposed Counsel for the Debtors

**ANNEX 5 TO THE BIDDING PROCEDURES ORDER**
**Auction Results Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF AUCTION RESULTS IN CONNECTION WITH**
**THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' OPERATING ASSETS**

PLEASE TAKE NOTICE THAT:

1.    <u>Introduction</u>.  Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), as chapter 11 debtors and debtors-in-possession in the above-referenced chapter 11 cases, conducted an auction (the "**Auction**") with respect to the proposed sale (the "**Sale**") of substantially all of the Debtors' operating assets (the "**Purchased Assets**") in accordance with the order (the "**Bidding Procedures Order**") of the Bankruptcy Court of the District of Delaware (the "**Bankruptcy Court**"), entered on [_____], 201_, (a) approving the bidding procedures (the "**Bidding Procedures**"), (b) scheduling the Auction and a hearing (the "**Sale Hearing**") for the Sale of the Purchased Assets, and (c) approving certain procedures related to the assumption and assignment of those executory contracts and unexpired leases related to the Purchased Assets and whose assignment is contemplated by the Sale.

2.    <u>Auction Results</u>.  Upon conclusion of the Auction, the Debtors determined, in consultation with the Committee (as defined in the Bidding Procedures), pursuant to the Bidding Procedures and subject to the Bankruptcy Court's approval, that the highest or otherwise best bidder was [_____] (the "**Successful Bidder**") and the second highest or otherwise best bidder was [_____] (the "**Backup Bidder**").  The asset purchase agreements of the Successful Bidder and the Backup Bidder, as these documents were modified by the Successful Bidder and the Backup Bidder at the Auction (respectively, the "**Successful Bid**" and the "**Backup Bid**") are attached hereto as **Exhibit A-1** and **Exhibit A-2**, respectively.

3.    <u>Initial Assignment Notice</u>.  On [_____], 201_, the Debtors served an initial assignment notice that indicated their intent to assume and assign certain agreements to which either Debtor is a party (collectively, the "**Assigned Agreements**"), as well as the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Assigned Agreement pursuant to section 365 of the Bankruptcy Code (the "**Cure Amounts**").

4.    <u>Additional Assumed Agreements/Amended Cure Amounts</u>.  Attached as **Exhibit B-1** and **Exhibit B-2** hereto is a list, pursuant to the **Successful Bid** and the **Backup**

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761).  The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA  90245.

**Bid**, respectively, of (i) any additional Assigned Agreements along with any associated Cure Amounts and (ii) any amended Cure Amounts with respect to the original Assigned Agreements.

5.    <u>Adequate Assurance of Future Performance</u>.  Attached as **Annex A** hereto is a description of the **[Successful Bidder / Backup Bidder]** that demonstrates that party's ability to perform the Debtors' obligations under the Assigned Agreements.

6.    <u>Sale Hearing</u>.   The Bidding Procedures Order provides that the Sale Hearing will be held on [_____], 2016 at [_____] a.m. **(prevailing Eastern Time)**, before the Honorable [_____], United States Bankruptcy Judge, in Courtroom [_____] at the United States Bankruptcy Court for the District of Delaware, 824 Market Street N, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will request that the Bankruptcy Court enter an order approving the Sale of the Purchased Assets to the Successful Bidder.

7.    <u>Objection Deadline</u>.   Any interested party that wishes to object to the Successful Bidder's adequate assurance or the Backup Bidder's adequate assurance designated in this Notice, must file a written objection with the Court no later than **12:00 p.m. on [____]** (the "**Objection Deadline**"), and serve such an objection (each a "**Sale Objection**") on the following parties (collectively, the "**Objection Parties**"): (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice; (_____) the Successful Bidder; and (_____) the Backup Bidder, so that it is **actually received** by the Objection Deadline.  To the extent any party (a) that previously received notice of a Cure Amount in connection with the Sale and wishes to object to a modified Cure Amount designated in this Notice or (b) did not receive notice of a Cure Amount in connection with the Sale and wishes to object to its Cure Amount designated in this Notice, such party must file a written objection (each, a "**Cure Objection**") prior to the Sale Hearing and may argue such objection at the Sale Hearing.

8.    To the extent that any interested party does not timely serve (x) a Sale Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Additional Assumed Contract or Additional Assumed Lease; (ii) agreed that the Successful Bidder and the Backup Bidder have provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) agreed to the terms of the Sale Order; and (iv) waived any and all objections in connection with items (i) through (iii) hereof, or (y) a Cure Objection as set forth above, such party will be deemed, as applicable, to have (i) consented to the relevant Additional Cure Amount or Amended Cure Amount, if any; (ii) agreed to the terms of the Sale Order; and (iii) waived any and all objections in connection with items (i) through (ii) hereof.

9.    A copy of each of the Bidding Procedures Order or any other document referenced herein can be viewed and obtained on the Court's website at https://ecf.deb.uscourts.gov or (without charge) at www._____.

Dated: _____ __, 2016          PACHULSKI STANG ZIEHL & JONES LLP

_____

Jeffrey N. Pomerantz (CA Bar No. 143717)
Michael R. Seidl (DE Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:     jpomerantz@pszjlaw.com
               mseidl@pszjlaw.com


-and-

BRYAN CAVE LLP
Robert J. Miller (AZ Bar No. 13334)
Brian C. Walsh (MO Bar No. 58091)
Kerry A. Moynihan (CA Bar No. 250571)
Laura U. Hughes (MO Bar No. 60732)
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone:  602/364-7000
Facsimile:   602/364-7070
E-mail:     rjmiller@bryancave.com
               brian.walsh@bryancave.com
               kerry.moynihan@bryancave.com
               laura.hughes@bryancave.com

Proposed Counsel for the Debtors

DOCS_SF:88651.4 10821/001

**ANNEX 6 TO THE BIDDING PROCEDURES ORDER**
**Creditor Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-_____  (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF MOTION FOR ORDER
(A) APPROVING ASSET PURCHASE AGREEMENT AND
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' OPERATING ASSETS; (B) AUTHORIZING THE SALE OF ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND OTHER
INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 363(f)
AND 363(m); (C) ASSUMING AND ASSIGNING CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE OF THE FOLLOWING:

       1.     <u>Introduction</u>.  On _____, 2015, Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), as chapter 11 debtors and debtors-in-possession in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), filed (a) a motion (the "**Bidding Procedures Motion**") for an order (the "**Bidding Procedures Order**"), (i) approving the bidding procedures and bidder protections (the "**Bidding Procedures**") with respect to the sale (the "**Sale**") of substantially all the Debtors' operating assets (the "**Purchased Assets**"), and assignment of certain contracts and leases related thereto; (ii) scheduling an auction (the "**Auction**") for the Purchased Assets and a hearing approving the transactions (the "**Sale Hearing**"); and (iii) approving certain procedures (the "**Assignment Procedures**") related to the assumption and assignment of those executory contracts and unexpired leases related to the Purchased Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**"); and (b) a motion (the "**Sale Motion**") for an order (the "**Sale Order**"), (a) approving the Sale of the Purchased Assets, and (b) approving the assumption and assignment of the Assumed Contracts and Leases.

       On _____, 201_, the Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**"): (a) approving the Bidding Procedures with respect to the Sale of the Purchased Assets; (b) scheduling the Auction and the Sale Hearing; and (c) approving the Assignment Procedures for the Assumed Contracts and Leases).

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761).  The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA  90245.

2.    _Agreement_.  The Debtors have entered into that certain Asset Purchase Agreement with Mattel, Inc. (the "**Purchaser**"), for the Sale of the Purchased Assets and the assignment of certain contracts and leases related thereto.

3.    _Important Dates_.    Pursuant to the Bidding Procedures Order, the Bankruptcy Court has set the following relevant dates for the Auction and approval of the Sale of the Purchased Assets:

| | |
|---|---|
| **Bid Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Objection Deadline** | **January 21, 2016 at 4:00 p.m. ET** |
| **Auction** | **January 25, 2016 at 10:00 a.m. ET** |
| **Supplemental Objection Deadline** | **January 28, 2016 at 4:00 p.m. ET** |
| **Sale Hearing** | **January 28, 2016 at _:_.m. ET** |

4.    _Auction_.  In the event that the Debtors receive qualified bids for the Purchased Assets other than the one submitted by the Purchaser, the Debtors intend to conduct the Auction.  The Auction will take place at the Delaware offices of Pachulski Stang Ziehl & Jones, LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, starting at 10:00 a.m. (prevailing Eastern Time) on January 25, 2016, or such other place, date and time as may be designated by the Debtor, in consultation with the Committee (as defined in the Bidding Procedures), at or prior to the Auction.

5.    _Sale Hearing_.  The Bidding Procedures Order provides that the Sale Hearing will be held on **January 28, 2016 at __:00 __.m. (prevailing Eastern Time)**, before the Honorable _____, United States Bankruptcy Judge, in Courtroom __ at the United States Bankruptcy Court for the District of Delaware, 824 Market Street N, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will request that the Bankruptcy Court enter an order approving the Sale of the Purchased Assets to the prevailing bidder(s) at the Auction (or to the Purchaser in the event the Auction is not held).

6.    _Objections_.  Objections, if any, to the Sale Motion (other than objections with respect to cure amounts or adequate assurance of future performance under the Assumed Contracts and Leases, which are subject to the Assignment Procedures) and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured

creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice, so as to be actually received by **4:00 p.m. (prevailing Eastern Time) on January 21, 2016 (the "Objection Deadline")**.

       7.    <u>PLEASE NOTE</u>: This is the ONLY NOTICE of the sale of the Purchased Assets that will be mailed to ALL KNOWN GENERAL CREDITORS of the Debtors under any applicable law.  Further updates regarding the sale process and a copy of the Motion, the Agreement, the Bidding Procedures, the Assignment Procedures, or any other document referenced herein can be viewed and obtained on the Court's website at www.ecf.deb.uscourts.gov or (without charge) at www._____.  You may also contact counsel for the Debtors to request copies of the Motion or any other document.

Dated: _____ \_\_, 2015        PACHULSKI STANG ZIEHL & JONES LLP

                             Jeffrey N. Pomerantz (CA Bar No. 143717)
                             Michael R. Seidl (DE Bar No. 3889)
                             919 North Market Street, 17th Floor
                             P.O. Box 8705
                             Wilmington, DE  19899-8705
                             Telephone: 302/652-4100
                             Facsimile: 302/652-4400
                             E-mail:    jpomerantz@pszjlaw.com
                                            mseidl@pszjlaw.com

                           -and-

                         BRYAN CAVE LLP
                         Robert J. Miller (AZ Bar No. 13334)
                         Brian C. Walsh (MO Bar No. 58091)
                         Kerry A. Moynihan (CA Bar No. 250571)
                         Laura U. Hughes (MO Bar No. 60732)
                         Two North Central Avenue, Suite 2200
                         Phoenix, AZ 85004-4406
                         Telephone:  602/364-7000
                         Facsimile:  602/364-7070
                         E-mail:    rjmiller@bryancave.com
                                            brian.walsh@bryancave.com
                                          kerry.moynihan@bryancave.com
                                          laura.hughes@bryancave.com

                         Proposed Counsel for the Debtors

## ANNEX 7 TO THE BIDDING PROCEDURES ORDER
### Further Assignments Notice

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., et al.,[1] | ) | Case No. 15-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF FURTHER ASSUMPTION AND ASSIGNMENT OF ADDITIONAL
EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT
TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' OPERATING ASSETS**

PLEASE TAKE NOTICE THAT:

1.     <u>Introduction</u>.  Fuhu, Inc. and Fuhu Holdings, Inc. (the "**Debtors**"), as chapter 11 debtors and debtors-in-possession (in the above-referenced chapter 11 case (the "**Chapter 11 Cases**"), conducted an auction (the "**Auction**") with respect to the proposed sale (the "**Sale**") of substantially all the Debtors' operating assets (the "**Purchase Assets**"), in accordance with the order (the "**Bidding Procedures Order**") of the Bankruptcy Court of the District of Delaware (the "**Bankruptcy Court**"), entered on [_____], (a) approving the bidding procedures (the "**Bidding Procedures**"), (b) scheduling the Auction and a hearing (the "**Sale Hearing**") for the Sale of the Purchased Assets; and (c) approving certain procedures related to the assumption and assignment of those executory contracts and unexpired leases related to the Purchased Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**").

2.     <u>Auction Results</u>.     Upon conclusion of the Auction, the Debtors determined, in consultation with the Committee (as defined in the Bidding Procedures), pursuant to the Bidding Procedures and subject to the Bankruptcy Court's approval, that the highest or otherwise best bidder was [_____] (the "**Successful Bidder**") and the second highest or otherwise best bidder was [_____] (the "**Backup Bidder**"). The asset purchase agreements of the Successful Bidder and the Backup Bidder, as these documents were modified by the Successful Bidder and the Backup Bidder at the Auction (respectively, the "**Successful Bid**" and the "**Backup Bid**") are attached hereto as **Exhibit A-1** and **Exhibit A-2**, respectively.

3.     <u>Initial Assignment Notice</u>. On [_____], the Debtors served an initial assignment notice that indicated their intent to assume and assign certain agreements to which either Debtor is a party (collectively, the "**Assigned Agreements**"), as well as the cure amount, asserted by the Debtors, that is necessary to cure any default under the relevant Assigned

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); and Fuhu Holdings, Inc. (9761).  The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA  90245.

Agreement pursuant to section 365 of the Bankruptcy Code (the "**Initial Assignment Cure Amounts**").

4.    Additional Assignment Notice. On [_____], the Debtors served an additional assignment notice that indicated their intent to assume and assign certain agreements to which either Debtor is a party (collectively, the "**Additional Assigned Agreements**"), as well as the cure amount, asserted by the Debtors, that is necessary to cure any default under the relevant Additional Assigned Agreement pursuant to section 365 of the Bankruptcy Code (the "**Additional Assignment Cure Amounts**").

5.    Attached as **Annex A** hereto is a description of the Purchaser that demonstrates the Purchaser's ability to perform the Debtors' obligations under the Further Assignments ("**Purchaser's Adequate Assurance**").

6.    The Debtors hereby provide notice of their intent to assume and assign certain agreements to which either Debtor is a party, which agreements are identified in **Annex B** hereto (singularly or collectively, the "**Further Assumed Agreements**"). Annex B also identifies, for each Further Assumed Agreement, the effective day of assignment; a description of the Further Assumed Agreement; the premises relating to the Further Assumed Agreement (if the relevant Further Assumed Agreement is an Assumed Lease); and the cure amount, asserted by the Debtors, that is necessary to cure any default under the relevant Further Assumed Agreement pursuant to section 365 of the Bankruptcy Code (the "**Further Assignment Cure Amounts**", and together with the Initial Assignment Cure Amounts and the Additional Assignment Cure Amounts, the "**Cure Amounts**").

7.    Nothing contained in this Notice is to be construed as an admission by the Debtors as to the character of any document denominated as a Further Assumed Agreement, as an executory contract or unexpired lease, or to the rights of any parties thereto.

8.    To the extent that any interested party wishes to object to any matter pertaining to the Further Assignments, then such interested party must file a written objection (an "**Further Assignments Objection**") with the Bankruptcy Court no later than at 4:00 p.m. (prevailing Eastern Time) on the fifteenth day after service of the Further Assignments Notice (the "**Further Assignments Objection Deadline**"), and simultaneously serve such an Objection on the following parties: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com and Michael R. Seidl, mseidl@pszjlaw.com), and Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian C. Walsh, brian.walsh@bryancave.com), (b) counsel to the Committee, if any, (c) counsel to any secured creditor that has entered an appearance in these cases, (d) counsel to the Purchaser, Latham & Watkins LLP, 355 S. Grand Ave., Los Angeles, CA 90071 (Attn: Peter M. Gilhuly, peter.gilhuly@lw.com and Ted A. Dillman, ted.dillman@lw.com), and (e) any other party requesting notice, so that it is actually received by the Further Assignments Objection Deadline. Such objections will be heard at a hearing to be scheduled by the Bankruptcy Court.

9.     To the extent that any party-in-interest does not timely serve a Further Assignments Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Further Assumed Agreement; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amounts, if any; and (iv) agreed to the terms of the Motion.

10.    A copy of the Bidding Procedures Order or any other document referenced herein can be viewed and obtained on the Bankruptcy Court's website at https://ecf.deb.uscourts.gov or (without charge) at www._____.

Dated: _____ __, 2015          PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No. 143717)
Michael R. Seidl (DE Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:     jpomerantz@pszjlaw.com
              mseidl@pszjlaw.com

-and-

BRYAN CAVE LLP
Robert J. Miller (AZ Bar No. 13334)
Brian C. Walsh (MO Bar No. 58091)
Kerry A. Moynihan (CA Bar No. 250571)
Laura U. Hughes (MO Bar No. 60732)
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: 602/364-7000
Facsimile:  602/364-7070
E-mail:rjmiller@bryancave.com
          brian.walsh@bryancave.com
          kerry.moynihan@bryancave.com
          laura.hughes@bryancave.com

Proposed Counsel for the Debtors