# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Fuhu, Inc., *et al.*,[1]<br><br>　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 15-12465 (CSS)<br>) (Jointly Administered)<br>)<br>)<br>) Re: Docket No. 3, 40 |

## SECOND INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, CONFIRMING DEBTORS' ABILITY TO SELL INVENTORY, GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, AND (B) SETTING A FINAL HEARING

Upon consideration of the Motion (the "Motion")[2] filed by Fuhu, Inc. and Fuhu Holdings, Inc. (the "Debtors"), the above-captioned debtors and debtors in possession, seeking, inter alia, (a) authority pursuant to sections 105, 361, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, for the Debtors to use Cash Collateral (as defined below), and the Court having subject-matter jurisdiction to consider the Motion and the relief request therein pursuant to 28 U.S.C. § 1334; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) the twenty (20) largest unsecured creditors of the Debtors on a non-consolidated basis, and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i); and no other or further notice needing to be provided; and the relief

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Fuhu, Inc. (7896); Fuhu Holdings, Inc. (9761); Fuhu Direct, Inc. (2180); and Nabi, Inc. (4119). The location of the Debtors' headquarters and service address is 909 N. Sepulveda Blvd., Suite 540, El Segundo, CA 90245.

[2] Capitalized terms not defined in this Interim Order shall have the same meaning as set forth in the Motion.

DOCS_DE:203766.4 29396/001

requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements and evidence in support of the relief requested therein at a hearing before the Court on December 9, 2015, and December 17, 2015 (collectively, the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A. The Court has jurisdiction over these cases and this proceeding under 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over the Motion is proper under 28 U.S.C. § 1409(a).

B. Subject to the terms and conditions of Paragraph 12 of this Order, TCP Agent and TCP Lenders (as the same are defined below) shall be deemed to have filed proofs of claim against each of the Debtors asserting that:

1. the Credit Agreement dated as of May 27, 2015 (as amended or otherwise modified from time to time, the "TCP Credit Agreement"), by and among Fuhu, Inc., the lenders from time to time party thereto (collectively, the "TCP Lenders"), and Obsidian Agency Services, Inc., as Administrative Agent and as Collateral Agent (in such capacities, "TCP Agent") for the TCP Lenders, and all of the other "Loan Documents" (as defined in the TCP Credit Agreement, as amended or otherwise modified from time to time, collectively, "TCP Prepetition Documents"), evidence and govern (a) all of the "Obligations" (as defined in the TCP Credit Agreement) under the TCP Prepetition Documents (collectively, and together with the "TCP Allowable 506(b) Amounts" defined below, the "TCP Prepetition Debt"), (b) the asserted

liens and security interests of TCP Agent and TCP Lenders in the "Collateral" (as defined in the TCP Credit Agreement, collectively, "TCP Prepetition Collateral") under the Prepetition Documents (collectively, "TCP Prepetition Liens"), subject only to any Permitted Priority Liens (as defined below), and (c) the prepetition financing relationship among Debtors, TCP Agent, and the TCP Lenders. For purposes of this Order, "Permitted Priority Liens" means any liens in favor of third parties upon the TCP Prepetition Collateral, which third-party liens, as of the Petition Date, (i) had priority under applicable law over the TCP Prepetition Liens, (ii) were not subordinated by any agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected, and enforceable as of the Petition Date;

2. the TCP Prepetition Debt constitutes the legal, valid, and binding obligation of Debtors, enforceable in accordance with the terms and provisions of the TCP Prepetition Documents;

3. as of the Filing Date, each Debtor is liable for the payment and the performance of the TCP Prepetition Debt, and the TCP Prepetition Debt is an allowed secured claim in an amount not less than $6,199,052.27, exclusive of accrued and accruing attorneys' fees, costs, and expenses and other charges and amounts allowable under Bankruptcy Code § 506(b), which include, without limitation, interest at the default rate as provided for in the TCP Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the TCP Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such interest, fees, costs, expenses, and other charges are included in the Budget), and all costs and expenses at any time incurred by TCP Agent or any TCP Lender in connection with the negotiation, preparation, and submission of this Order and any other order or document related hereto, and the representation of TCP Agent or any TCP Lender in these cases (including,

without limitation, in defending any Challenge, as defined below) (collectively, "<u>TCP Allowable 506(b) Amounts</u>");

        4.     no offsets, defenses, or counterclaims to the TCP Prepetition Debt exist, and no portion of the TCP Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action, or challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law; and

        5.     the TCP Prepetition Liens: (a) are valid, continuing, first-priority, properly perfected, and fully enforceable liens and security interests that are not subject to any claims, counterclaims, defenses, rights of setoff, recoupment, or deductions whatsoever, and that are otherwise unavoidable and not subject to any recharacterization or subordination pursuant to any provision of the Bankruptcy Code, any agreement, or applicable non-bankruptcy law (such liens and security interests are hereinafter referred to as "<u>Priority Liens</u>"), subject only to Permitted Priority Liens, if any; and (b) secure all of the TCP Prepetition Debt.

    C.     The Prepetition Lenders, which for the avoidance of doubt, includes LSQ Funding Group, L.C., are entitled to adequate protection as set forth herein pursuant to Bankruptcy Code §§ 361, 362, and 363 for any decrease in the value of their interests, with respect to the TCP Agent and the TCP Lenders, the TCP Prepetition Collateral, and with respect to LSQ, the Debtors' accounts receivable and proceeds thereof (the "<u>LSQ Prepetition Collateral</u>"), from and after the Petition Date.

    D.     The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d), and 9014, and Bankruptcy Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**IT IS HEREBY ORDERED THAT:**

1. <u>Grant of Motion</u>. The Motion is granted on an interim basis, as set forth below.

2. <u>Authority to Use Cash Collateral</u>. Subject to the terms and conditions set forth in this Interim Order, and notwithstanding the terms of any deposit account control agreement with or notice provided by Tennenbaum thereunder, the Debtors are authorized to use Cash Collateral solely in accordance with the terms of this Order from the date of entry of this Order until the earliest of: (i) the entry of a further interim order or a final order on the Motion, after which the terms of such order shall govern; (ii) December 30, 2015; (iii) the dismissal of the Debtors' Chapter 11 cases; (iv) the conversion of any of these cases to cases under Chapter 7 of the Bankruptcy Code; (v) the entry of an order reversing, vacating, or otherwise modifying this Order; or (vi) the appointment of a trustee under Section 1104(a) of the Bankruptcy Code or an examiner with expanded powers. Absent the entry of a further interim order or a final order on the Motion, then upon the occurrence of any event described in items (ii) through (vi) above, each Debtor's authority to use Cash Collateral will immediately terminate without any notice or any further action. Any cash now or hereafter in the Debtors' possession or control that does not constitute Cash Collateral shall be used, and shall be deemed used, first by the Debtors to pay authorized expenses in the Budget (defined below).

3. <u>Budget</u>. The Debtors are authorized to use Cash Collateral to the extent required to pay when due those expenses specifically enumerated in the Budget attached hereto as **Attachment 1** (the "Budget"), provided that the Debtors shall not be authorized to use Cash Collateral for any other purpose, including, without limitation, any payment on or of obligations arising before the Petition Date, unless expressly authorized by order of this Court with the written agreement of the Debtors, the TCP Agent and LSQ or, in the absence of such agreement,

after notice and a hearing. The Debtors shall consult with the TCP Agent regarding any expenditures in the Budget category designated "Other Costs & Commitments," in each case, prior to any Debtor's expenditure in respect of same; provided, however, that, notwithstanding anything to the contrary in this Order or the Budget, pending a further ruling by the Court at a telephonic hearing to be held 12/22/15 @ 2:30pm, the Debtors shall not make any expenditures in connection with the Budget category designated "Other Costs & Commitments" without the prior written consent of the TCP Agent, which shall not be unreasonably withheld. The Budget may be amended with the written consent of TCP Agent and the TCP Lenders and concurrent notice to the United States Trustee.

4. <u>Fees of United States Trustee and Professionals</u>. The Debtors may use Cash Collateral to pay fees owing to the United States Trustee pursuant to 28 U.S.C. § 1930(a) in such amounts as determined in agreement with the United States Trustee or by final order of the Court. Any and all amounts payable to professionals of the Debtors or the Official Committee of Unsecured Creditors (the "<u>Committee</u>") are subject to further order of the Court.

5. <u>Replacement Liens</u>. As adequate protection of the interests, if any, each of the Pre- Petition Lenders in Cash Collateral, each of the Pre-Petition Lenders shall be and hereby is granted valid, perfected, binding, and enforceable replacement liens on and security interests in (collectively, the "<u>Replacement Liens</u>") all of the assets of the Debtors and their estates of the same types and kinds as those assets in which the applicable Pre-Petition Lender held valid and non-avoidable liens or security interests as of the Petition Date, whether now existing or hereafter acquired (collectively, the "<u>Postpetition Collateral</u>"). The Replacement Liens are in addition to, and shall have the same relative priority as, the Pre-Petition Lenders' liens and security interests on the Petition Date and shall secure the amount by which the value of the

applicable Pre-Petition Lender's interest in its collateral decreases as a result of the use of Cash Collateral or the imposition of the automatic stay in this case. The Replacement Liens are automatically deemed perfected upon entry of this Order without the necessity of any Pre-Petition Lender's taking possession or control (including, in the case of deposit accounts, without having to enter into any control agreement or similar agreement with the applicable bank or other depository institution), filing financing statements or other documents, or taking any other action, and will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any case. The Replacement Liens shall not encumber any claim or cause of action arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions").

6. Insurance. As further adequate protection of the Pre-Petition Lenders' interests, if any, in Cash Collateral and other collateral, the Debtors shall maintain property and casualty insurance with financially sound and reputable insurance companies on all personal property of the Debtors' estates in an amount not less than the value of such property on the Petition Date.

7. Additional Adequate Protection for LSQ. As further adequate protection of LSQ's interests, if any, in Cash Collateral, if and to the extent that the Debtors collect the proceeds of any accounts receivable against which LSQ extended credit to the Debtors, the Debtors shall segregate and hold such proceeds in escrow, pending resolution of any disputes between the Debtors and LSQ.

8. Additional Adequate Protection for TCP Agent and the TCP Lenders. As further adequate protection of the interests of TCP Agent, the TCP Lenders and LSQ in Cash Collateral, TCP Prepetition Collateral, the TCP Prepetition Liens and the LSQ Prepetition Collateral:

(a) <u>Default Rate Interest Payments</u>. Debtors shall make monthly payments of interest to the TCP Lenders at the default rate as provided in Section 2.07 of the TCP Credit Agreement.

(b) <u>Priority of TCP Prepetition Liens; Allowance of Claims of TCP Agent and TCP Lenders</u>. Upon occurrence of the "Allowance Date" as defined in Paragraph 12 of this Order: (i) the TCP Prepetition Liens shall constitute Priority Liens, subject only to Permitted Priority Liens, if any; (ii) the TCP Prepetition Debt shall constitute the legal, valid, and binding obligation of Debtors, enforceable in accordance with the terms of the TCP Prepetition Documents; (iii) no offsets, defenses, or counterclaims to the TCP Prepetition Debt shall exist, and no portion of the TCP Prepetition Debt is subject to any avoidance, recharacterization, or subordination under or pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iv) the TCP Prepetition Documents are valid, binding, and enforceable in all respects; and (v) the claims of TCP Agent and TCP Lenders with respect to the TCP Prepetition Debt shall be all purposes allowed claims within the meaning of Bankruptcy Code § 506 in an amount not less than $6,199,052.27, exclusive of accrued and accruing attorneys' fees, costs, and expenses and other charges and accrued and accruing TCP Allowable 506(b) Amounts.

(c) <u>Allowed Bankruptcy Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of TCP Agent and the TCP Lenders in the TCP Prepetition Collateral and LSQ in the LSQ Prepetition Collateral granted pursuant to this Order proves to be insufficient, TCP Agent, TCP Lenders and LSQ will have an allowed claim under Bankruptcy Code § 507(b) in the amount of any such insufficiency, with priority over: (i) all costs and expenses of administration of the cases that are incurred under any provision of the Bankruptcy Code; and (ii) the claims of any other party in interest under Bankruptcy Code § 507(b).

9. <u>Release of Inventory</u>. Notwithstanding any notice or demand by TCP Agent under any TCP Prepetition Document, any warehouseman, logistics provider, bailee, or other person in possession of the Debtors' inventory is hereby authorized to release and ship inventory as directed by the Debtors. Pending further order of Court, the Debtors shall be only permitted to sell, release, and ship, and direct the release or shipment of, existing inventory in the ordinary course of business and in accordance with the Budget until December 30, 2015 or such earlier date upon which this Order may expire or terminate pursuant to its terms. Warehousemen, logistics providers, bailees, and other persons in possession of the Debtors' inventory shall have no obligation to determine whether or not a proposed release or shipment of inventory is permitted under this Order.

10. <u>Segregation of Cash Collateral</u>. Promptly upon entry of this order and, thereafter, not less than weekly, the Debtors shall identify and report to each of the Pre-Petition Lenders any cash that has been received by the Debtors that they contend is not Cash Collateral. All such cash and Cash Collateral now or hereafter coming into the Debtors' possession or control shall be promptly deposited and held in an account at Wells Fargo Bank, N.A. to be agreed upon by TCP Agent and the Debtors (the "<u>Designated Account</u>") pending further order of the Court, except as expressly permitted to be used pursuant to the terms of this Order. TCP Agent shall promptly deposit all Cash Collateral that it has received on or after the commencement of these Cases in the Designated Account, and such Cash Collateral shall be subject to the terms of this Order.

11. <u>Reporting Requirements</u>. During the term of this Interim Order, the Debtors shall provide the following written reports to TCP Agent, the TCP Lenders, and the other Pre-Petition Lenders: (i) monthly operating reports filed with this Court; and (ii) by the close of business on Tuesday of each week, an accounts-receivable aging and a comparison of actual receipts and expenditures to amounts reflected in the Budget, each as of the end of the prior week; (iii) by 5:00

p.m. (PST) each business day, a summary report of the preceding business day's accounts-receivable aging, actual receipts, sales, and expenditures; and (iv) by 5:00 p.m. (PST) each business day, such information as the Debtors have received in response to good-faith requests made at the open of each such business day to each of the Debtors' bailees, warehousemen, and logistics providers regarding shipments of inventory during the preceding business day, or since the date of the last such report provided to TCP Agent, the TCP Lenders, and the other Prepetition Lenders. With respect to subsection (iv) of the preceding sentence, the Debtors agree to request such information as TCP Agent, TCP Lenders, and the other Prepetition Lenders may reasonably request from time to time.

12. <u>Reservation of Rights; Bar of Challenges and Claims</u>.

(a) The alleged claims and interests of TCP Agent and the TCP Lenders as described in Finding B and Paragraph 8(b) of this Order will be binding on all parties in interest after the expiration of the Investigation Period (defined below) (the "<u>Allowance Date</u>"), unless and solely to the extent that (1) TCP Agent receives written notice in accordance with this Paragraph 12 of a potential Challenge (defined below) during the Investigation Period (defined below) from any Challenge Party (defined below) and (2) the Court subsequently rules in favor of the plaintiff in respect of any such timely and properly filed Challenge.

(b) <u>Definitions</u>. For purposes hereof: (i) "<u>Challenge</u>" means any good faith claim or cause of action challenging the extent, validity, perfection, priority, or enforceability of the TCP Prepetition Debt, the TCP Prepetition Liens, or any other claims or causes of action against TCP Agent or any TCP Lender, that any Challenge Party may bring in accordance with this Order; (ii) "<u>Challenge Party</u>" means, to the extent having requisite standing, any of the Debtors, the Committee, any trustee appointed or elected in any of the cases, or any other party-in-interest; (iii) "<u>Investigation Period</u>" means the period from the Petition Date until the date that

is the later of: (A) seventy-five (75) days after the Petition Date, or (B) sixty (60) days after the date that a Committee is formed.

13.     <u>Preservation of Rights</u>.

(a)     Nothing in this Interim Order represents a determination that any of the Pre-Petition Lenders has a valid claim against the Debtors or a valid, non- avoidable lien on or security interest in any assets of the Debtors or their estates. The Debtors' right to object to any claim, pursue any Avoidance Action, or otherwise seek appropriate relief against the Pre-Petition Lenders is preserved.

(b)     Nothwithstanding anything to the contrary contained in this Interim Order, nothing in this Interim Order affects any and all rights of setoff, offset, and recoupment of D&H Distributing Co. ("<u>D&H</u>") that (i) had priority under applicable law over the TCP Preptition Liens, (ii) were non-avoidable, valid and enforceable setoffs or recoupments, and (iii) are properly maintained under the Bankruptcy Code. All such rights are hereby fully reserved and preserved. Nothing contained in this Order shall be deeemd to result in a waiver of such rights, priming of such rights, or impariment of such rights whatsoever. Additionally, D&H is not required to commence any Challenge to the TCP Prepetition Debt, the TCP Prepetition Liens, or assert any other claims against TCP Agent or any TCP Lender in order to preserve any of D&H's setoff and recoupment rights.

14.     <u>No Waiver</u>. TCP Agent and TCP Lenders will not be deemed to have suspended or waived any of their respective rights or remedies under this Order, the Prepetition Documents, the Bankruptcy Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter expressly made in writing, signed by a duly authorized officer of TCP Agent and TCP Lenders, as applicable, and directed to the Debtors. No failure of TCP Agent or any TCP Lender

to require strict performance by any Debtor (or by any trustee) of any provision of this Order will waive, affect, or diminish any right of TCP Agent or any TCP Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of TCP Agent or any TCP Lender in the exercise of any right or remedy under this Order, the Prepetition Documents, or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by TCP Agent or any TCP Lender of any of its rights under the Prepetition Documents, the Code, or applicable non-bankruptcy law, including, without limitation, any right to later assert (a) that any of its interests in the TCP Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (b) a claim under Bankruptcy Code § 507(b).

15. <u>Further Relief</u>. Except as specifically set forth herein, nothing in this Interim Order shall (i) limit the rights of the Debtors or the Pre-Petition Lenders to the relief granted herein; (ii) impair any of the Pre-Petition Lenders' right to relief under Section 507(b) of the Bankruptcy Code if the protection provided in this Interim Order proves to be inadequate; or (iii) bar the Debtors or the Pre-Petition Lenders from seeking other and further relief in this case.

16. <u>Binding Effect</u>. The terms and provisions of this Interim Order shall be binding upon and inure to the benefit of the Debtors, their estates, the Pre-Petition Lenders, and their successors and assigns, including any trustee appointed in this case.

17. <u>Effectiveness</u>. This Interim Order shall become effective upon its entry by the Clerk of the Court.

18. <u>Final Hearing: Procedure for Objections and Entry of Final Order</u>. The Motion is set for a final hearing before this Court at at 9:30 a.m. (EST) on December 30, 2015 (the "<u>Final Hearing</u>"), at which time any party in interest may present any timely

filed objections to the entry of a final order on the Motion or an amendment to this Order. The Debtors shall promptly serve a copy of this Interim Order and notice of the such hearing as set forth therein, by regular mail, upon (a) the United States Trustee, (b) all creditors known to the Debtors who may have liens against the Debtors' assets, (c) the United States Internal Revenue Service, (d) counsel to the Committee and (e) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i). Objections to the entry of the entry of a further interim order on the Motion or an amendment to this Order shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801, no later than December 28, 2015, which objections shall be served so that the same are received on or before 5:00 p.m. EST on such date by (i) counsel to the Debtors, (ii) counsel to the Committee, and (iii) the Office of the United States Trustee, Attn., J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801. Any objections by creditors or other parties in interest to any of the provisions of this Interim Order may be deemed waived unless filed and served in accordance with this paragraph.

19. <u>Objections Overruled</u>. All objections to the entry of this Interim Order are hereby overruled, except as directed by the Court at the Hearing and as set forth herein.

20. <u>Order Effective</u>. This Interim Order shall be effective as of the date of signature by the Court. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: December 21, 2015

_____
Honorable Christopher S. Sontchi
United States Bankruptcy Judge