IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FUHU, INC., *et al.,*[1] | ) | Case No. 15-12465 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Hearing Date: January 13, 2016, at 1:00 p.m. prevailing Eastern time**
**Objection Deadline: January 6, 2016, at 4:00 p.m. prevailing Eastern time**

**APPLICATION PURSUANT
TO SECTION 327(a) OF THE BANKRUPTCY CODE, RULE 2014 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2014-1 FOR
AUTHORITY TO EMPLOY KRYS GLOBAL USA, LLC AS INVESTMENT
BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Fuhu Inc., *et al.* (the "Debtors") apply (the "Application") to this Court for authority to employ the firm of KRyS Global USA, LLC ("KRyS") as their investment banker pursuant to Section 327(a) of the Bankruptcy Code *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors show the Court as follows:

**Relief Requested**

1.      By this Application, the Debtors respectfully request, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving the employment and retention of KRyS as investment banker  and waiving certain informational requirements of Local Rule 2016-2(d).

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Fuhu, Inc. (7896); Fuhu Holdings, Inc. (9761); Fuhu Direct, Inc. (2180); and Nabi, Inc. (4119). The location of the Debtors' headquarters and service address is 1700 E. Walnut Avenue, Suite 500, El Segundo, CA 90245.

## Jurisdiction

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.      Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirms their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      The statutory bases for the relief sought herein are sections 327(a) of the Bankruptcy Code, as well as Bankruptcy Rule 2014(a) and Local Rule 2014-1. Compensation will be in accordance with section 328(a) of the Bankruptcy Code, subject to Court order.

## Background

5.      On December 7, 2015, with respect to debtors Fuhu, Inc., Fuhu Holdings, Inc., and on December 11, 2015, with respect to Debtors Fuhu Direct, Inc., and Nabi, Inc. (collectively, the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 9, 2015, and December 15, 2015, respectively, the Court entered orders [D.I. 37, 112] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On December 16,

2015, the United States Trustee for Region 3 (Delaware) appointed a statutory committee of unsecured creditors in the chapter 11 cases pursuant to Bankruptcy Code section 1102 [D.I. 119].

6.    The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of James Mitchell in Support of First-Day Motions* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.[2]

### Basis for Relief

7.    In light of the size and complexity of this reorganization case, the Debtors require a qualified and experienced investment banker with the resources, capabilities and experience of KRyS to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' cases.    An investment banker such as KRyS fulfills a critical service that complements the services provided by the Debtors' other professionals.

8.    Established in 1998, KRyS (or its predecessor) and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructuring, both out-of-court and in chapter 11 cases.    KRyS's professionals have actively been retained as investment bankers, CROs, financial advisors, and expert witnesses in numerous cases, including, among others: *Apache Junction Hospital, LLC,* Case No. 13-bk-18188-EWH (Bankr. D. Ariz. 2013); *Kit Digital, Inc.,* Case No. 13-bk-11298-REG (Bankr. S.D. N.Y 2013); *CSD, LLC,* Case No. 12-bk-21668-LED (Bankr. D. Nev. 2012); *Nesbitt Portland Property LLC,* Case No. 12-bk-12883-RR (Bankr. C.D. Cal. 2012); *Madison Hotel LLC,* Case No. 11-bk-12560-MG (Bankr. S.D. N.Y. 2011); *November 2005 Land Investors, LLC,* Case. No. 11-20704-MKN (Bankr. D. Nev. 2011); *Specialty Trust, Inc.,* Case No. 10-bk-

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

51432-GWZ (Bankr. D. Nev. 2010); *Mercedes Homes, Inc.,* Case No. 09-bk-11191-PGH (Bankr. S.D. Fl. 2009); *Station Casinos, Inc.,* Case No. 09-bk-52477-GWZ (Bankr. D. Nev. 2009); *Mervyn's Holdings, LLC,* Case No. 08-bk-11586-KG (Bankr. D. Del. 2008); *Mesaba Aviation, Inc* Case No. 05-bk-39258-GFK (Bankr. D. Minn. 2005).

9.    KRyS commenced its engagement with the Debtors in October 2015 to provide certain investment banking and advisory services pursuant to the Engagement Letter, attached hereto as <u>Exhibit A</u>.   KRyS has worked closely with the Debtors' management, creditors and other professional advisors in exploring various strategic, financial and restructuring alternatives and otherwise assisting the Debtors in preparation for the commencement of these chapter 11 cases.  As a result, KRyS has developed significant relevant experience and expertise regarding the Debtors and is well qualified to represent the Debtors as investment banker in connection with such matters in a cost-effective and efficient manner.

10.    If this Application is approved, several KRyS personnel, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors.   Such personnel will work closely with the Debtors' management and other professionals throughout the reorganization process.   The Debtors require a knowledgeable investment banker to render essential restructuring services.   KRyS is well qualified to provide these services and represent the Debtors' interests.  Accordingly, the Debtors submit that the retention of KRyS should be approved.

## **Scope of Services**

11.    The Debtors and KRyS have executed the Engagement Letter, which governs the relationship between them.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and KRyS and reflect the parties' mutual agreement as to the

substantial efforts that will be required in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated thereby, KRyS has provided and has agreed to provide the services set forth in the Engagement Letter, as summarized below:[3]

  a.  Familiarize itself with the business, operations, assets, and financial condition of the Company;

  b.  Assist and advise, as necessary, in the postpetition, non-ordinary course responsibilities of the Company;

  c.  Manage and oversee all marketing and sale efforts, including but not limited to, preparation of marketing materials, establishment and management of an electronic database (if necessary), communication/negotiation with potential bidders, and evaluation of bids;

  d.  Provide testimony, as necessary, regarding Company valuation, the appropriateness of the sale process, highest and best bids, and any other issues the Court wishes KRyS to address; and

  e.  Other tasks deemed necessary to assist in the bankruptcy or to consummate the proposed sale.

Such professional services are necessary to the Debtors' restructuring efforts under chapter 11 of the Bankruptcy Code and in the ongoing operation and management of the Debtors' businesses and assets. KRyS has considerable experience in providing these and other services to financially troubled companies.

  12.  The Debtors believe that the services of KRyS will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.

---

[3]    All summaries herein of terms contained in the Engagement Letter are provided for convenience only. The terms set forth in the Engagement Letter control in all respects.

Specifically, KRyS will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of effort or cost.

13.    KRyS will play a vital role in analyzing and negotiating critical aspects of the Debtors' restructuring and plan of reorganization. KRyS will also continue to evaluate strategic alternatives for the Debtors in their efforts to maximize the value of the estates. KRyS will participate in discussions and meetings with the Debtors' key creditor constituencies, including the prepetition senior secured lenders any statutory committee appointed in this case and other parties-in-interest and their advisors. These activities may require preparing materials and analyses, facilitating diligence requests, and providing such advisory services as have been agreed and are customary with regard to restructuring the Debtors' obligations.

## **Compensation**

14.    In consideration of the services to be provided by KRyS, the Debtors have, in addition to the Indemnification Obligations (defined below), agreed to compensate and reimburse KRyS as set forth in the Engagement Letter (the "Fee and Expense Structure"), as summarized below:

a.    Monthly Fee: $75,000.00 per month;

b.    Success Fee: 1.5% of proceeds of sale (Success Fee only applies if resulting fee exceeds the aggregate amount of Monthly Fee paid up to closing of sale – if Success Fee is less than aggregate amount of Monthly Fee paid up to closing of sale then no Success Fee will apply).

c.    Expense Reimbursement:    The Debtors will reimburse KRyS's reasonable expenses, including reasonable fees and expenses of outside counsel.

## **Indemnification**

15.    The Engagement Letter further provides that the Debtors will indemnify and hold harmless KRyS and any of its members, partners, officers, directors, advisors, representative, employees, agents, affiliates or controlling persons (such indemnification obligations, as modified by the proposed retention order, the "Indemnification Provisions"), which provisions are attached to and made a part of the Engagement Letter. The Indemnification Provisions are standard provisions, both in chapter 11 cases and outside chapter 11, and, as modified by the Proposed Order, reflect the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions.

16.    The Debtors and KRyS believe that the Indemnification Provisions are customary and reasonable for financial advisory engagements, both out-of-court and in chapter 11 cases. *See, e.g., In re Pliant Corp.,* Case No. 09-10443 (MFW) (Bankr. D. Del. Apr. 1, 2009) (authorizing retention of financial advisor on similar indemnification terms); *In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 5, 2009) (same); *In re Foamex Int'l Inc.*, Case No. 05-12685 (KG) (Bankr. D. Del. Nov. 8, 2005) (same).

17.    The Indemnification Provisions are similar to other indemnification provisions that have been approved by this Court and other bankruptcy courts. See, e.g., *In re Tropicana Entm't, LLC,* Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by debtors); *In re New Century TRS Holdings, Inc.,* Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (same); see also *In re Comdisco, Inc.,* Case No 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); *In re United Artists Theatre Company,* Case No. 00-3514 (SLR) (Bankr. D. Del. Nov.

14, 2000) (authorizing indemnification of Houlihan Lokey by debtors); *In re Joan & David Halpern, Inc.,* 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling U.S. Trustee's objection to indemnity provision).

18.    The terms and conditions of the Engagement Letter, including the Indemnification Provisions, were negotiated by the Debtors and KRyS at arms' length and in good faith.  The Debtors respectfully submits that the Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of KRyS's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

19.    Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions, as outlined in the Engagement Letter, subject to the modifications set forth in the proposed retention order.

### The Fee and Expense Structure is Reasonable

20.    The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by investment banks and financial advisors of similar stature to KRyS for comparable engagements, both in and out of bankruptcy proceedings.

21.    The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with KRyS's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by KRyS and other investment banks and financial advisors in connection with the rendering of comparable services to clients such as the Debtors.  KRyS and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

22.     KRyS's restructuring expertise, as well as its financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of KRyS's engagement hereunder, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtors derived from the services provided by KRyS hereunder cannot be measured by a reference to the number of hours expended by KRyS's professionals.

23.     The Fee and Expense Structure has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of KRyS and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for KRyS and (ii) the actual time and commitment required of KRyS and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for KRyS.

24.     In light of the foregoing and given the numerous issues that KRyS may be required to address in the performance of its services hereunder, KRyS's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for KRyS's services for engagements of this nature both in the in and out-of-court contexts, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## Record Keeping And Applications For Compensation

25.     It is not the general practice of investment banking and financial advisory firms, including KRyS, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because KRyS does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a

schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(g), KRyS should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d). KRyS should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

26.    KRyS will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. KRyS's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any procedures established by the Court.

## Legal Authority

27.    The Debtors seek authority to employ and retain KRyS as its investment banker and financial advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

28.    In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions

in Schedule I) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. Courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See, e.g., In re U.S. Airways, Inc.,* Case No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); *see also In re J.L. French Auto. Castings, Inc.,* Case No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

29.     The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by KRyS (ii) KRyS's substantial experience with respect to financial advisory and investment banking services and (iii) the Fee and Expense Structures typically utilized by KRyS and other leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

30.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other chapter 11 cases. *See, e.g., In re Inspiration Biopharmaceuticals, Inc.,* Case No. 12-18687 (Bankr. D. Mass. Dec. 19, 2012); *In re Broadview Networks Holdings, Inc.,* Case No. 12-13581 (Bankr. S.D.N.Y. Sept. 14, 2012); *In re Circus and Eldorado Joint Venture,* Case No. 12-51156 (Bankr. D. Nev. July 6, 2012); *In re Delta Petroleum Corp.,* Case No. 11-14006 (Bankr. D. Del. Dec. 16, 2011); *In re Trico Marine Services, Inc.,* Case No. 10-12653 (Bankr. D. Del. Aug. 5, 2010); *In re CIT Group Inc.,* Case No.

09-16565 (Bankr. S.D.N.Y. Nov. 1, 2009); *In re General Motors Corp.,* Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009); *In re Lyondell Chem. Co.,* Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009). Accordingly, the Debtors believe that KRyS's retention on the terms and conditions proposed herein is appropriate.

### KRyS' Disinterestedness

31. The Debtors submit that the retention of KRyS under the terms described herein is appropriate under sections 327(a), 328, and 1107 of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee,[4] with the Court's approval, to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that:

a. is not a creditor, an equity security holder, or an insider;

b. is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)(A)-(C).

32. Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the

---

[4]  Pursuant to section 1107(a) of the Bankruptcy Code, the Debtors, as debtors in possession, have substantially all of the rights, powers and duties of a trustee. 11 U.S.C. § 1107(a).

commencement of the case." 11 U.S.C. § 1107(b). To the best of the Debtors' knowledge, except to the extent set forth in the Declaration of Grant Lyon (the "Lyon Declaration"), attached hereto as Exhibit B, KRyS does not have any connection with the Debtors, their creditors or any other party in interest.

33.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The Debtors may require KRyS to render extensive investment banking and advisory services, the immediate cost of which may not be estimable. Accordingly, it is necessary and essential for the Debtors, as debtors in possession, to employ investment banks and financial advisors under a general retainer to render the foregoing services.

34.    Subject to this Court's approval, and in accordance with sections 328, 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules and other procedures that may be fixed by the Court, the Debtors request that KRyS be compensated as set forth in the Engagement Letter and that KRyS receive reimbursement of its actual and necessary expenses incurred in connection with its representation of the Debtors in this case.

### Notice

35.    Notice of this Application has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Official Committee of Unsecured Creditors; (iii) the prepetition lenders; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit C, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: December 23, 2015

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira Kharasch (CA Bar No. 109084)
Michael R. Seidl (DE Bar No. 3889)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        mseidl@pszjlaw.com
        crobinson@pszjlaw.com

-and-

**BRYAN CAVE LLP**
Robert J. Miller (AZ#013334) (*pro hac vice pending*)
Two N. Central Ave., Suite 2200
Phoenix, Arizona  85004
T: 602-364-7000
F: 602-364-7070
Email: rjmiller@bryancave.com

-and-

Kerry A. Moynihan (SBN 25057) *(pro hac vice)*
3161 Michelson Drive, Suite 1500
Irvine, California  92612
T: 949-223-7000
F: 949-223-7100
Email: kerry.moynihan@bryancave.com

-and-

Brian C. Walsh (MO#58091) *(pro hac vice)*
Laura Uberti Hughes (MO#60732) *(pro hac vice)*
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri  63102
T: 314-259-2000
F: 314-259-2020
Email:  brian.walsh@bryancave.com
        laura.hughes@bryancave.com

*Proposed Counsel for the Debtors and Debtors in Possession*